## METRO BULLETINS CORPORATION *v.* LOUIS SOBOLESKI
## (11047)

O'CONNELL, LANDAU and SCHALLER, Js.

Argued October 29, 1992—decision released March 2, 1993

*Frank C. White, Jr.,* for the appellant (defendant).
*Stephen G. Silverberg,* for the appellee (plaintiff).

O'CONNELL, J. The defendant appeals from a judgment, rendered after a court trial, awarding $9400 to the plaintiff. The defendant claims that the trial court (1) improperly denied his motion for a stay, (2) improperly construed the Connecticut Certificate of Trade Name statute, and (3) should have found that the defendant gave the plaintiff actual notice of the defendant's agency status. We reverse the judgment of the trial court.

The following facts are necessary to resolve this appeal. On April 22, 1989, the plaintiff entered into a written contract whereby it agreed to provide billboard advertising services to a business known as Prime Pontiac for a six month period. The name "Prime Pontiac" was written on the contract on the line reserved for the name of the contracting firm. Below that line, the defendant, Louis Soboleski, president of Prime Pontiac, signed his name on behalf of Prime Pontiac. Immediately following his signature, in the area reserved for the signer's title, the defendant wrote, in an illegible script, what appears to be a word beginning with the letter P.

At the time of contracting, Bridgeside Pontiac, Inc. (Bridgeside), was a Connecticut corporation in good standing and was doing business as Prime Pontiac. In compliance with General Statutes § 35-1,[1] Bridgeside's

---

[1] General Statutes § 35-1 provides in pertinent part: "FICTITIOUS TRADE NAMES FORBIDDEN; CERTIFICATES. UNFAIR TRADE PRACTICES. No person, except as hereinafter provided, shall conduct or transact business in this state, under any assumed name, or under any designation, name or style, corporate or otherwise, other than the real name or names of the person or persons conducting or transacting such business, unless there has been filed, in the office of the town clerk in the town in which such business is or is to be conducted or transacted, a certificate stating the name under which such business is or is to be conducted or transacted and the full name and post-office address of each person conducting or transacting such business or, in the case of a corporation using such an assumed name, its full name and principal post-office address. Such certificate shall be executed

status had been disclosed in a certificate of trade name, executed and filed in the Middletown town clerk's office by the defendant in his capacity as president of Bridgeside.

On January 23, 1991, the plaintiff commenced this action for the unpaid balance owed on the contract. The complaint named the defendant as "Louis Soboleski doing business as Prime Pontiac." On January 31, 1991, Bridgeside filed a Chapter 11 bankruptcy petition listing the plaintiff as an unsecured creditor. Approximately one week later, the defendant filed a notice, in the present case, of Bridgeside's bankruptcy filing. The defendant pleaded as a special defense, that Bridgeside doing business as Prime Pontiac was the proper defendant in the action and that Bridgeside had filed for bankruptcy.

On August 20, 1991, the defendant filed a motion to stay the proceedings due to Bridgeside's Chapter 11 bankruptcy. The motion requested the court to "acknowledge and enforce the automatic stay . . . ." The trial court denied the motion and referred the case to a fact finder who recommended judgment for the plaintiff for $9400. The trial court rendered judgment in accordance with the fact finder's report and recommendations. The defendant appealed.

by all of such persons or, in the case of a corporation, by an authorized officer thereof, and acknowledged before some authority qualified to administer oaths. Each town clerk shall keep an alphabetical index of the names of all persons filing such certificates and of all names or styles assumed as hereinbefore provided and, for the indexing and filing of each such certificate, shall receive the statutory filing fee for documents established in section 7-34a, to be paid by the person filing such certificate. A copy of any such certificate, certified by the town clerk in whose office the same has been filed, shall be presumptive evidence, in all courts in this state, of the facts therein contained. . . . Any person conducting or transacting business in violation of the provisions of this section shall be fined not more than five hundred dollars or imprisoned not more than one year. Failure to comply with the provisions of this section shall be deemed to be an unfair or deceptive trade practice under subsection (a) of section 42-110b."

## I

We first consider the threshold question of whether the automatic stay provision of the federal bankruptcy law, 11 U.S.C. § 362,[2] is available to the defendant. Unlike Bridgeside, which is a debtor in the bankruptcy proceeding, the defendant is a nondebtor. As a general rule, the filing of a Chapter 11 bankruptcy petition does not enjoin litigation against nondebtors. G. Ishii-Chang, "Litigation and Bankruptcy: The Dilemma of the Codefendant Stay," 63 Am. Bankr. L.J. 257 (1989). A number of courts have issued blanket prohibitions on the application of the stay to any nondebtor regardless of its relationship to the debtor and the effect of the action sought to be stayed. See, e.g., *Fortier* v. *Dona Anna Plaza Partners,* 747 F.2d 1324, 1329–30 (10th Cir. 1984); *Lynch* v. *Johns-Manville Sales Corporation,* 710 F.2d 1194, 1196–97 (6th Cir. 1983); *Austin* v. *Unarco Industries, Inc.,* 705 F.2d 1, 4–5 (1st Cir.), cert. denied, 463 U.S. 1247, 104 S. Ct. 34, 77 L. Ed. 2d 1454 (1983); *Pitts* v. *Unarco Industries, Inc.,* 698 F.2d 313, 314 (7th Cir. 1983); *In re Kelton Motors, Inc.,* 121 B.R. 166, 193 (Bankr. D. Vt. 1990).

There is, however, limited authority for extending the stay to a nondebtor in special circumstances. See *A.H. Robins Co.* v. *Piccinin,* 788 F.2d 994 (4th Cir.), cert. denied, 479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2d 177 (1986). Here, the defendant claims the benefit of the stay, asserting that he has an identity of inter-

---

[2] 11 U.S.C. § 362 provides in pertinent part: "(a) Except as provided in subsection (b) of this section, a petition . . . operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ."

est with the debtor.[3] He contends that a judgment against him is, in effect, a judgment against the bankrupt debtor. A sufficient identity of interest has been recognized as satisfying the special circumstances requirement. See id.

Before the merits of the defendant's identity of interest argument can be reached, however, we must determine the procedure by which the nondebtor may obtain the stay. Despite a split of authority, the weight of the case law indicates that a nondebtor, seeking to extend the stay beyond the debtor, must move for the extension in the bankruptcy court. See, e.g., *Ingersoll-Rand Financial Corporation* v. *Miller Mining Co.,* 817 F.2d 1424, 1427 (9th Cir. 1987); *Federal Land Bank of Spokane* v. *Stiles,* 700 F. Sup. 1060, 1063 (D. Mont. 1988); *B & B Associates* v. *Fonner,* 700 F. Sup. 7 (S.D.N.Y. 1988); *Rhode Island Hospital Trust National Bank* v. *Dube,* 136 F.R.D. 37, 39 (D.R.I. 1990); *In re Codfish Corporation,* 97 B.R. 132 (Bankr. D. Puerto Rico 1988); *In re All Seasons Resorts, Inc.,* 79 B.R. 901, 903 (Bankr. C. D. Cal. 1987); *In re MacDonald/Associates, Inc.,* 54 B.R. 865, 867 (Bankr. D.R.I. 1985); *In re Precision Colors, Inc.,* 36 B.R. 429, 431 (Bankr. S.D. Ohio 1984); *W. W. Gay Mechanical Contractor, Inc.* v. *Wharfside Two, Ltd.,* 545 So. 2d 1348, 1350 (Fla. 1989); *Collier* v. *Eagle-Picher Industries, Inc.,* 86 Md. App. 38, 48, 585 A.2d 256, cert. denied sub nom. *Corhart Refractories Co.* v. *Collier,* 323 Md. 33, 591 A.2d 249 (1991).

In the present case, the defendant did not file for an extension of the automatic stay in the bankruptcy court. Instead, he proceeded by motion in our state trial court. We believe that the cases requiring filing of the motion

---

[3] The defendant also claimed the benefit of the bankruptcy stay due to his common law right of indemnification as an officer of the debtor corporation. Claims that are merely mentioned but not otherwise analyzed in the brief, as is true of this claim, are considered abandoned. *Garrity* v. *McCaskey,* 223 Conn. 1, 2 n.3, 612 A.2d 742 (1992).

for an extension of the stay in the bankruptcy court represent the better reasoning. This is because "[i]t is fundamental under federal bankruptcy law that the automatic stay operates for the benefit of the debtor and trustee only, and gives other parties interested in property affected by the automatic stay no substantive or procedural rights." (Internal quotation marks omitted.) *Shorr* v. *Kind,* 1 Cal. App. 4th 249, 258, 2 Cal. Rptr. 2d 192 (1991). Only the bankruptcy court has the entire picture before it. It would be difficult, if not impossible, for a state trial court, which has only the immediate case before it, to determine the best interests of the bankruptcy estate. Accordingly, because the defendant, as a nondebtor, did not apply for an extension of the automatic stay in the bankruptcy court, we affirm the trial court's denial of the defendant's motion to stay.[4]

## II

We turn next to the defendant's claim that General Statutes § 35-1 is a notice statute and, as a result, the plaintiff had constructive notice that Bridgeside was the proper defendant. The fact finder found "that at the time this contract was executed, Bridgeside Pontiac, Inc., did business as Prime Pontiac pursuant to a trade name certificate filed with the town clerk of Middletown, Connecticut." He further found "that the certificate would reasonably apprise a creditor that a corporation was doing business as Prime Pontiac, and that the true corporate name could reasonably be inferred . . . ." Notwithstanding these findings, the fact finder gave no effect to the statute and made his recommendations according to the usual common law rules of agency.

---

[4] We note that because the stay must be sought by the nondebtor, it is a misnomer to refer to it as an *automatic* stay.

There are two possible purposes that § 35-1 might serve. First, it could be intended to protect a trade name from use by competitors, similar to the protection afforded authors and composers by the federal copyright statutes, or, second, it could be intended to benefit the public in general and creditors in particular by disclosing the true name and address of the person behind a trade name.

The general rule is that "[t]he object or purpose of statutes which regulate the doing of business under a fictitious or assumed name is . . . to protect the public *by giving notice* or information as to the person with whom they deal, and to afford protection against fraud and deceit." (Emphasis added.) 57 Am. Jur. 2d, Names § 66. Our Supreme Court has recognized this rule as the purpose behind Connecticut's trade name statute by enunciating that "its object is to enable a person dealing with another trading under a name not his own, to know the man behind the name, that he may know or make inquiry as to his business character or financial responsibility . . . ." *DiBiase* v. *Garnsey,* 103 Conn. 21, 27, 130 A. 81 (1925). The mandated disclosure is "intended for the protection of creditors . . . ." *Wofsey* v. *New York & Stamford R. Co.,* 106 Conn. 254, 258, 138 A. 136 (1927).

In this respect, § 35-1 differs from the statutes governing trademarks and service marks, which are designed to give their owners protection from infringement or unauthorized use. See General Statutes § 35-11a et seq. If a trade or service mark owner elects not to register the mark, the only risk is exposure to use of the mark by a competitor. This contrasts sharply with the risks posed by the failure to file a certificate of trade name. Section 35-1 provides two substantial penalties for noncompliance. First, a failure to comply shall be deemed to constitute an unfair or deceptive practice under § 42-110b (a) of the Con-

necticut Unfair Trade Practices Act (CUTPA). As a result, a defendant faces the full range of civil penalties and liabilities applicable to a CUTPA violation. Second, the defendant may be criminally prosecuted and imprisoned for as long as one year and fined up to $500. From this we conclude that, even though as an incidental benefit § 35-1 may provide some protection to persons transacting business under a trade name, it is primarily intended to protect creditors by giving them constructive notice of the contents of the trade name certificate.

It is a fundamental principle that all legislative enactments are intended to serve some purpose. *Union Trust Co.* v. *Heggelund,* 219 Conn. 620, 626, 594 A.2d 464 (1991); *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 422, 426 A.2d 1324 (1980). Section 35-1 contains several key provisions to achieve its purpose of notification. These include the mandate that each town clerk create and maintain a dual indexing system, thus enabling the public to find either the owner of a particular trade name or the trade name of a particular person or entity.

We are further persuaded that the statute was intended to provide constructive notice by its parallels with real property recording and indexing provisions. In requiring a filing and indexing system, § 35-1 is analagous to General Statutes § 7-25, which governs the recording and indexing of real property records. As is also true of real property records, a certified copy of a certificate of trade name is presumptive evidence in all courts in Connecticut of the facts stated in the certificate. See General Statutes § 7-23.

In light of the statute's specific mandates and substantial penalties, we cannot agree with the plaintiff's contention that § 35-1 is not a notice statute. The plaintiff's theory would mean that a business being con-

ducted under a trade name could not use that trade name without providing an affirmative disclosure of the entity behind the business in every transaction with the public. Disclosure, however, is precisely the intended function of the statute. As a result, the plaintiff's theory would render the statute meaningless. We will not presume that the legislature intended to enact meaningless or useless legislation. *Turner* v. *Turner,* 219 Conn. 703, 713, 595 A.2d 297 (1991); *Union Trust Co.* v. *Heggelund,* supra.

In the present case, because the certificate of trade name was filed before the parties entered into the contract, we hold that the plaintiff had constructive notice of the corporate principal's identity at the time of contracting. As stated by the Pennsylvania Supreme Court, construing a similar statute, the plaintiff "cannot plead ignorance of facts of which it is deemed to have had [constructive] notice." *Ulick* v. *Vibration Specialty Co.,* 348 Pa. 241, 243, 35 A.2d 332 (1944). Accordingly, the judgment of the trial court must be reversed.

Because our resolution of the second issue is dispositive of the appeal, we do not reach the issue of whether the defendant provided the plaintiff with actual notice of the defendant's agency status.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion LANDAU, J., concurred.

SCHALLER, J., dissenting. I disagree with the result reached in part II of the majority opinion. There, the majority concludes that "because the certificate of trade name was filed before the parties entered into the contract, we hold that the plaintiff had *constructive notice* of the corporate principal's identity at the time of contracting." (Emphasis added.) Notwithstanding our well established case law requiring an agent

to disclose the principal to a third party; see *Klepp Wood Flooring Corporation* v. *Butterfield,* 176 Conn. 528, 532–33, 409 A.2d 1017 (1979); *Robert T. Reynolds Associates, Inc.* v. *Asbeck,* 23 Conn. App. 247, 251, 580 A.2d 533 (1990); *New England Whalers Hockey Club* v. *Nair,* 1 Conn. App. 680, 683, 474 A.2d 810 (1984);[1] the result here enables the agent to escape personal liability after withholding critical information readily available to him but obtainable by the plaintiff only with considerable effort and inconvenience.

In addition to the facts recounted by the majority, it is important to note that the only names appearing with the plaintiff's name on the contract in question are "Prime Pontiac" on the line designated for "firm" and "Louis J. Soboleski" on the line designated for "signature" and "title." The only indication of title is an illegible notation that, even if assumed to be the letter P, does not indicate any one capacity more than any other.

The fact finder properly determined from the evidence that the plaintiff did not have actual knowledge that a corporation named Bridgeside Pontiac was involved in this transaction and that Soboleski signed only in his individual capacity. The record does not indicate, moreover, that Sobeleski undertook to alert the plaintiff that "Prime Pontiac," noted on the firm line, was *not an entity* at all but, instead, a *trade name.* Without further information being furnished by Soboleski, the only person or entity contracting with the plaintiff was Louis J. Soboleski, in his personal capacity. See, e.g., *Robert T. Reynolds Associates, Inc.* v. *Asbeck,* supra.

---

[1] For example, the court in *New England Whalers Hockey Club* v. *Nair,* 1 Conn. App. 680, 683, 474 A.2d 810 (1984), stated: "To avoid personal liability, it is the duty of an agent to disclose both the fact that he is acting in a representative capacity and the identity of his principal, since the party with whom he deals is not required to discover or to make inquiries to discover these facts."

The majority concludes that the plaintiff had constructive notice that Bridgeside Pontiac was the principal behind the trade name thus placing on the plaintiff the burden of discovering the details of the trade name disclosure made under § 35-1. There is, however, no reason whatsoever why the plaintiff would have known that Prime Pontiac was a trade name. How, then, did the duty arise to search one or more trade name indices located, by the terms of § 35-1, wherever the "business is or is to be conducted or transacted"?

It is true that our Supreme Court stated in a 1925 case, *DiBiase* v. *Garnsey*, 103 Conn. 21, 27, 130 A. 81 (1925), that "[the object of § 35-1] is to enable a person dealing with another trading under a name not his own, to know the man behind the name, that he may know or make inquiry as to his business character or financial responsibility." It is obvious, however, that whatever disclosure value this statute produces is minimal—minimal because the disclosure is recorded, not in any central, fixed or readily identifiable location as in the case of real property records or security interest filings under the Uniform Commercial Code,[2] but in at least one of the 169 towns in Connecticut "in which such business is or is to be conducted or transacted."

Section 35-1 is hardly a broad ranging statute fully protecting individuals doing business with persons or corporations using trade names. While it does serve the purpose of providing disclosure of the principal using a trade name, that information is usable only

---

[2] See General Statutes § 42a-9-401 (1), which provides: "The proper place to file in order to perfect a security interest is as follows: (a) When the collateral is timber to be cut or is minerals or the like, including oil and gas, or accounts subject to subsection (5) of section 42a-9-103a, or when the financing statement is filed as a fixture filing and the collateral is goods which are or are to become fixtures, then in the office where a mortgage on the real estate would be filed or recorded; (b) in all other cases, in the office of the secretary of the state."

when it is known that a trade name is involved. The statute makes no mention that the filing will constitute "constructive notice." The plain and unambiguous terms of the statute, therefore, cannot fairly be read to include this *additional* provision. *Battersby* v. *Battersby,* 218 Conn. 467, 471, 590 A.2d 427 (1991) ("[a]bsent ambiguity, the courts cannot read into statutes, by construction, provisions that are not clearly stated").

The preferable result is to require the party having possession of the information about the principal's identity—in this case Soboleski—to disclose that information before the transaction is consummated. See *Klepp Wood Flooring Corporation* v. *Butterfield,* supra; *Robert T. Reynolds Associates, Inc.* v. *Asbeck,* supra. Our cases setting forth the law of agency should take precedence over the majority's reading of the statute inasmuch as "constructive notice" is not specifically set forth in § 35-1. See *Battersby* v. *Battersby,* supra.

In this case, Soboleski had within his control all of the information necessary to alert the plaintiff as to what entity Soboleski envisioned was to be bound by the legal consequences flowing from this contract. For whatever reasons, he failed to disclose any information and, in fact, completed the signature portion of the contract in an ambiguous manner. The simple fact is that only Soboleski is bound by this contract as he is the only individual or entity executing it with the plaintiff.

Although the trade name statute is a disclosure statute—albeit extremely limited in scope and coverage—it is designed "to protect the public by giving notice or information." 57 Am. Jur. 2d, Names § 66. Our own Supreme Court indicated that the statute is for the benefit of others doing business with one operating behind a "name not his own." *DiBiase* v. *Garnsey,* supra. It seems inconsistent with that purpose

when the statute is employed to avoid liability by the very person possessing the relevant information needed for a fair evaluation of the transaction.

The majority believes that the purpose behind the trade name statute would be undermined were the business using the trade name to be required to provide "an affirmative disclosure of the entity behind the business in *every transaction with the public.*" That concern would not be relevant in this case if this court were to hold that the disclosure of principal rule governs. The statute is not rendered meaningless if this court requires the party in control of the information to disclose it to the party with whom he is doing business. It does not seem too much to ask of an individual acting as an agent in a given transaction who wants to avoid personal liability on a particular contract specifically to disclose his principal to the other party. See, e.g., *Myers-Lieber Sign Co.* v. *Weirich,* 2 Ariz. App. 534, 410 P.2d 491 (1966) (Cameron, J., dissenting); see also *Saco Dairy Co.* v. *Norton,* 140 Me. 204, 207, 35 A.2d 857 (1944) (fact that contract negotiated by agent under trade name not of itself sufficient disclosure of agency). In all fairness, the failure to do so should prevent that individual from escaping personal liability.

For the foregoing reasons, I respectfully dissent and would affirm the judgment of the trial court.