BURRITT INTERFINANCIAL BANCORPORATION *v.*
HOWARD M. WOOD III ET AL.
(12007)

O'CONNELL, HEIMAN and FREEDMAN, Js.

Argued October 4, 1993—decision released January 4, 1994

*Michael M. Darby,* with whom, on the brief, was *James H. Howard,* for the appellant (named defendant).

*John J. Graubard,* with whom were *Paula T. Yellman* and, on the brief, *Victoria Goodman* of the New York bar, for the appellee (plaintiff).

O'CONNELL, J. In this mortgage foreclosure action, the defendant Howard M. Wood III[1] appeals from the trial court's order opening the judgment of strict foreclosure. The appeal presents the following issues: (1) does the automatic stay of the federal bankruptcy statute apply to an action against a codebtor, and (2) does the automatic stay apply in a foreclosure action against a nondebtor cotenant? We answer both questions in the negative and reverse the trial court's order.

On June 21, 1988, the defendant and Peter J. Sklat, Jr., held title to real estate at 506 Garden Street in Manchester as tenants in common. On that date, they mortgaged the property to Burritt Interfinancial Bancorporation (bank)[2] in a commercial transaction to

---

[1] In this opinion, the named defendant, Howard M. Wood III, will be referred to as the defendant.

[2] On December 4, 1992, the commissioner of banking of the state declared Burritt insolvent, and appointed the Federal Deposit Insurance Corpora-

secure a $500,000 loan. Sklat and the defendant defaulted on the mortgage payments and on August 22, 1991, the bank commenced this foreclosure. The trial court, *Freed, J.,* rendered a judgment of strict foreclosure on March 30, 1992, and ordered law days commencing April 27, 1992, and ending May 1, 1992. The law days passed without redemption by Sklat, the defendant or any subsequent encumbrancer.

Unbeknownst to the bank or the defendant, sometime in February, 1992, Sklat had filed a petition under chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 1301 et seq. The bank learned of Sklat's bankruptcy on April 13, 1992. Although this was prior to the expiration of the law days, the bank took no action to interrupt their running and, on May 1, 1992, title to the defendant's one-half interest vested in the bank. On June 16, 1992, the bank filed a motion with the bankruptcy court seeking relief from the automatic stay of § 362 (a) of the bankruptcy code.[3] This motion was granted on June 16, 1992, and thereafter, on August 28, the bank filed a motion to open the strict foreclosure judgment. The trial court, *Dunn, J.,* granted the motion and opened the judgment of strict foreclosure on December 4, 1992. The defendant argues that opening the foreclosure was improper because (1) the automatic bankruptcy stay did not apply to him

tion as receiver, which appointment was confirmed by the Superior Court in the judicial district of Hartford-New Britain at Hartford. For convenience, the plaintiff will be referred to herein as the bank.

[3] Section 362 (a) of title 11 of the United States Code provides in pertinent part: "Except as provided in subsection (b) of this section, a petition . . . operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title  . . . ."

and (2) when the law days elapsed without redemption, title to his undivided interest vested in the bank.[4]

We first consider whether the automatic bankruptcy stay applies to actions against a defendant who is not a debtor in the bankruptcy proceeding. During the pendency of this appeal, we answered that question in *Metro Bulletins Corp.* v. *Soboleski,* 30 Conn. App. 493, 496–98, 620 A.2d 1314, cert. granted, 225 Conn. 923, 625 A.2d 823 (1993). "As a general rule, the filing of a . . . bankruptcy petition does not enjoin litigation against nondebtors."[5] Id., 496.

*Metro* recognized "limited authority for extending the stay to a nondebtor in special circumstances." Id.; see *A.H. Robins Co.* v. *Piccinin,* 788 F.2d 994 (4th Cir.), cert. denied, 479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2d 177 (1986). To benefit from such extension of the stay, the nondebtor must move for the extension in the bankruptcy court. *Metro Bulletins Corp.* v. *Soboleski,* supra, 497, and authorities therein cited. Because it would not have been in his best interest to do so, it is understandable that the defendant did not move for such an extension. It is significant that the bankruptcy trustee did not feel that the bankrupt's estate required the protection of the extension of the stay to civil actions against the defendant. Consequently, the bankruptcy court's order lifting the automatic stay referred only to Sklat. It did not mention the defendant because the stay never applied to his one-half interest. It is well established that a case against a bankrupt debtor and a nonbankrupt debtor, although stayed against the

---

[4] Unless we affirm the opening of the foreclosure judgment, the bank's right to seek a deficiency judgment against the defendant expired thirty days after title vested in the bank. See General Statutes § 49-14.

[5] The petition in *Metro Bulletins Corp.* v. *Soboleski,* 30 Conn. 493, 496–98, 620 A.2d 1314 (1993), was filed under chapter 11 of the bankruptcy code and in the present case the petition was filed under chapter 13. We do not discern any difference for purposes of this case.

bankrupt debtor, may nevertheless proceed against the nonbankrupt debtor. *Matter of Safeguard Mfg. Co.,* 25 Bankr. 415 (D. Conn. 1982); *Royal Truck & Trailer, Inc.* v. *Armadera,* 10 Bankr. 488 (N.D. Ill. 1981); *Catania* v. *Catania,* 26 Conn. App. 359, 362, 601 A.2d 543 (1992); *Connecticut National Bank* v. *Foley,* 18 Conn. App. 667, 668 n.1, 560 A.2d 475 (1989).

The bank agrees with the general principle of *Metro,* but argues that mortgage foreclosures are an exception to the general rule. We disagree.

The bank misconstrues the nature of a tenancy in common. Sklat and the defendant each held title to an undivided one-half interest in the property as tenants in common. "The interest of a tenant in common is as fully alienable as any other property interest and transfer does not require consent of cotenants. Thus a cotenancy may be transferred by deed, lease, mortgage, will, or intestate succession." 4A R. Powell, The Law of Real Property (1993) § 602 (9). A tenant in common may sell or encumber his interest in the cotenancy without the consent of his cotenants, and may thus introduce a stranger into the cotenancy.

Our Supreme Court has ruled on the effect of a conveyance by one cotenant. "It is charged that it is void as being an attempt by one cotenant to convey his interest without the consent of his cotenants. We know of no rule of law which leads to that result. The grantor quitclaimed all of his interest in the property. He did not undertake to convey a part in severalty, thus seeking to accomplish a division by his own unaided act, and deprive his cotenants of their interest in the part conveyed. His action was not, to use the language of the cases, against his cotenants, and did not purport to affect their rights as cotenants of the whole. . . . The end sought by the instrument was the substitution of the grantee for the grantor, as the owner of the inter-

est which the latter had had. It is competent for a tenant in common to make such a substitution by his conveyance." (Citations omitted.) *Humphrey* v. *Gerard,* 83 Conn. 346, 359, 77 A. 65 (1910); *Staples* v. *Bradley,* 23 Conn. 167, 170 (1854).

The undivided one-half interests of Sklat and the defendant were absolutely separate and distinct as far as the right of each to convey or to encumber his interest. Thus, Sklat's bankrupt estate consisted solely of his own one-half interest. At all times, the defendant retained the right to convey, lease, mortgage, encumber or otherwise alienate his one-half interest. He could voluntarily alienate his one-half interest and likewise it could be involuntarily alienated through strict foreclosure. The ultimate effect of the foreclosure against the defendant was to substitute the bank for the defendant as a cotenant with Sklat.

Furthermore, the bank is attempting to confer formal approbation on the colloquial expression, "anything that 'affects' the bankrupt estate is included within the automatic stay." The three applicable subsections of the bankruptcy statute are very specific and are expressly limited to stay "(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property against the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title . . . ." None of these subsections applies in the present case. As illustrated above, nothing in § 362 (a) explicitly states that the automatic stay extends to codebtors on a promissory note or mortgage. Significantly, such language extending the stay to codebtors exists under the

applicable consumer loan counterpart in 11 U.S.C. § 1301 (a) of the bankruptcy statute.[6]

The bank relies primarily on the cases of *In re Bialac,* 712 F.2d 426 (9th Cir. 1983), and *In re 48th Street Steakhouse, Inc.,* 835 F.2d 427 (2d Cir. 1987), cert. denied, 485 U.S. 1035, 108 S. Ct. 1596, 99 L. Ed. 2d 910 (1988). Neither case, however, involved the application of the automatic stay in a real estate mortgage foreclosure situation. In *Bialac,* the court held that the automatic stay prohibited the creditor from foreclosing on the five-sixth's interest in a surplus cash note owned by non-bankrupts because the bankrupt had a right of redemption in the note pursuant to Arizona law. *In re Bialac,* supra, 432. Similarly, in *In re 48th Street Steakhouse, Inc.,* supra, the automatic stay precluded a landlord from terminating the nonbankrupt prime tenant's lease because it would have destroyed the bankrupt sub-tenant's possessory interest. Unlike the bankrupt's interests "affected" in the foregoing cases, the expiration of the defendant's law days did not "affect" any interest in Sklat's estate. It makes no difference who owns the other one-half interest and is thus Sklat's cotenant.

An analogous case cited by the defendant is persuasive. In *Cardinal Federal Savings & Loan Assn.* v. *Flugum,* 461 N.E.2d 932 (Ohio App. 1983), two of the three owners of real property filed bankruptcy petitions after the mortgagee commenced foreclosure proceedings. Shortly thereafter, the bankruptcy court abandoned the property as an asset of the estate. The state court then held that the automatic stay tolled for the bankrupt owners the period of time for filing an answer to the

---

[6] Section 1301 (a) of title 11 of the United States Code provides in relevant part: "[A] creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt . . . ."

bank's complaint in foreclosure but did not toll the same period for that of the nonbankrupt owner. Id., 934. In granting a default judgment against the nonbankrupt for failure to plead despite the presence of the bankrupts' stay, the court explicitly held that *"the automatic stay provisions only extend to the debtor filing bankruptcy proceedings and not to non-bankrupt codefendants."* (Emphasis added.) Id.

Moreover, the position in which the bank now finds itself resulted from its own inaction. When it learned of Sklat's bankruptcy on April 13, 1992, the defendant's law day had not yet run. The bank had until May 1, to move in the state court to open the judgment to stop the defendant's law day from running. General Statutes § 49-15[7] provides for opening strict foreclosure judgments but expressly enunciates that "no such judgment shall be opened after the title has become absolute in any encumbrancer." In the present case, title to the defendant's one-half interest became absolute in the bank when the defendant failed to redeem on his law day. *Crane* v. *Loomis,* 128 Conn. 697, 700, 25 A.2d 650 (1942). The trial court lacked authority to grant the plaintiff's motion to open the judgment as to the defendant.

In summary, when Sklat filed his bankruptcy petition the automatic bankruptcy stay halted any further action in the foreclosure of his interest in the property. The foreclosure action, however, continued against the defendant's interest and, upon expiration of his law day, his title vested in the bank. At that point, the bank

---

[7] General Statutes § 49-15 provides: "Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the same, upon the written motion of any person having an interest therein, and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable; *but no such judgment shall be opened after the title has become absolute in any encumbrancer."* (Emphasis added.)

and Sklat were tenants in common of the property and § 49-15 barred the opening of the strict foreclosure judgment concerning the defendant's interest.[8]

The judgment is reversed and the case is remanded with direction to deny the motion insofar as it applies to the interest of the defendant Howard M. Wood III.

In this opinion the other judges concurred.

---

[8] The motion to reopen read: "WHEREFORE, the plaintiff moves this Court to reopen the Judgment of Strict Foreclosure so that it can name Gilbert L. Rosenbaum, Trustee of the Bankruptcy Estate of Mr. Sklat, as a necessary and indispensable party and so that it may establish new law days." This arguably applies only to opening the judgment against Sklat's interest and giving him or his bankruptcy trustee new law days. The parties, however, treated the motion as applying also to the defendant. Where, as here, a case was argued upon a certain theory, we will dispose of it on the theory on which it was argued. See *Crozier* v. *Zaboori,* 14 Conn. App. 457, 463, 541 A.2d 531 (1988).