# NEW MILFORD SAVINGS BANK *v.*
# MAURICE J. JAJER ET AL.
## (SC 15695)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and Peters, Js.

Argued January 13—officially released March 31, 1998

*Kenneth J. Bartschi*, with whom were *Wesley W. Horton* and *Michael J. Mannion*, for the appellant (plaintiff).

*George M. Purtill*, with whom was *Seth Jacoby*, for the appellees (named defendant et al.).

*Opinion*

PETERS, J. The issue in this appeal is whether General Statutes §§ 49-15 and 49-1[1] deprive the Superior

---

[1] General Statutes § 49-15 provides: "Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the same, upon the written motion of any person having an interest therein, and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable; but no such judgment shall be opened after the title has become absolute in any encumbrancer."

General Statutes § 49-1 provides: "The foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure and also against any person or persons upon whom service of process to constitute an action in personam could have

Court of jurisdiction to open a foreclosure judgment in order to correct the inadvertent omission of a parcel of the mortgaged property from the judgment. The plaintiff, the New Milford Savings Bank (bank), brought an uncontested action against the defendants Maurice and Maria Jajer,[2] for foreclosure of a mortgage that they had executed as security for a $270,000 loan. Although the mortgage conveyance included three parcels of land, two vacant parcels and a third parcel containing the defendants' residence, the bank mistakenly had referred only to a description of the two vacant parcels in its foreclosure complaint and lis pendens.[3] On August 22, 1994, the trial court, *Pickett, J.*, rendered a judgment of strict foreclosure against only the two parcels described in the bank's complaint. The court found the mortgage debt to be $308,181.11 and the value of the property to be $170,000 based on an appraisal of all three parcels. In the absence of redemption of the property by the defendants or any other lien holder, title vested absolutely in the bank with the passage of the last law days on September 26, 1994.

Soon thereafter, the bank discovered its mistake in the course of federal bankruptcy proceedings initiated

been made within this state at the commencement of the foreclosure; but the foreclosure is not a bar to any further action upon the mortgage debt, note or obligation as to any person liable for the payment thereof upon whom service of process to constitute an action in personam could not have been made within this state at the commencement of the foreclosure. The judgment in each such case shall state the names of all persons upon whom service of process has been made as herein provided."

[2] The complaint named as defendants, in addition to Maurice and Maria Jajer, Sears, Roebuck & Co., the Waterbury Telephone Employees Federal Credit Union and the state department of revenue services, each of which had subordinate liens against the property. Those defendants, however, are not parties to the appeal. References to the defendants are to Maurice and Maria Jajer.

[3] The defendants conceded that the bank's mistake was inadvertent. The bank's inadvertence is shown, in part, by the fact that the foreclosure proceedings included an appraiser's recertification of value that covered all three parcels.

by the defendants' prayer for relief under chapter 11 of the Bankruptcy Code. 11 U.S.C. § 362. In order to enforce its state court judgment, the bank moved the United States Bankruptcy Court, *Krechevsky, J.*, to lift the automatic stay provision of the Bankruptcy Code. Relying on the defendants' concession that the bank's mortgage remained in effect on the omitted third parcel, the Bankruptcy Court found that the defendants retained no equity in the third parcel. The court concluded that the bank had a colorable claim to the third parcel and, on February 23, 1995, lifted the stay[4] to enable the bank "to take whatever action is appropriate in state court under the circumstances."[5]

Returning to Superior Court, the bank moved to open the judgment of strict foreclosure. Despite the defendants' objection, the court, *R. Walsh, J.*, granted the motion and permitted the bank to file an amended complaint requesting new law days for the omitted third parcel. On May 15, 1995, the trial court, *Pickett, J.*, granted the bank's motion to render "judgment of strict foreclosure upon the amended complaint containing all other terms previously entered . . . ."[6]

Before the law day on the third parcel had passed, the defendants appealed to the Appellate Court, which

[4] The defendants appealed from the order of the Bankruptcy Court to the United States District Court for the District of Connecticut, in Hartford. To our knowledge, that case, *Jajer* v. *New Milford*, Docket No. 3:95CV592 CFD, was still pending as of the date of this opinion.

[5] In its formal order modifying the stay, the Bankruptcy Court referred to its memorandum of decision but described its order somewhat differently. The order stated that "the stay afforded by 11 U.S.C. § 362, be, and hereby is, modified to permit the movant to proceed in state court to prosecute a supplemental action concerning a mortgage dated March 19, 1987, on property located at Merryall Road, New Milford, Connecticut."

[6] Because the 1995 foreclosure judgment incorporated "other terms previously entered," the judgment includes no terms concerning the amount of the mortgage debt. In their motion to open the judgment, the defendants did not raise any question about the court's failure to consider whether and in what amount the earlier foreclosure affected the calculation of the

reversed the judgment of the trial court in light of its conclusion that the trial court lacked jurisdiction to open the 1994 foreclosure judgment. The court construed the last sentence of § 49-15[7] to preclude further trial court jurisdiction after title has vested in the foreclosing mortgagee with respect to any part of the mortgaged property. *New Milford Savings Bank* v. *Jajer*, 44 Conn. App. 588, 594–95, 691 A.2d 598 (1997). In addition, the court construed § 49-1[8] to preclude the bank from seeking further relief because its failure to pursue a deficiency judgment had the effect of discharging the defendants from further liability on the underlying note. Id., 595–96.

The bank filed a petition for certification to appeal to this court. We granted certification to consider only the following question: "Did the Appellate Court properly conclude that the trial court lacked jurisdiction to open the judgment of foreclosure based on General Statutes §§ 49-15 and 49-1?" *New Milford Savings Bank* v. *Jajer*, 241 Conn. 906, 695 A.2d 540 (1997).[9] We disagree with the conclusion of the Appellate Court that the trial court lacked jurisdiction to render the 1995 foreclosure judgment.[10]

I

We consider, first, the defendants' claim that § 49-15 deprived the trial court of jurisdiction to grant the bank's motions to open the judgment of foreclosure

---

mortgage debt. The court, *Pickett, J.,* denied the defendants' motion to open the judgment.

[7] See footnote 1 of this opinion.

[8] See footnote 1 of this opinion.

[9] In light of the limited question that we certified for appeal, we decline to consider the merits of the defendants' allegations that, because of the inability of their trial counsel to appear at scheduled hearings, they were unfairly hampered in the presentation of their objections to the opening of the original foreclosure judgment.

[10] The Appellate Court noted that the defendants' appeals had raised other issues that the court did not address.

and to file an amended foreclosure complaint to correct the bank's inadvertent omission of the third parcel from its original complaint. Relying on the language of § 49-15 that "no such judgment [of strict foreclosure] shall be opened after title has become absolute in any encumbrancer," the Appellate Court agreed with the defendants that the statute applied to any mortgage foreclosure, total or partial. *New Milford Savings Bank* v. *Jajer*, supra, 44 Conn. App. 594. We construe the statute differently.

## A

The law governing strict foreclosure lies at the crossroads between the equitable remedies provided by the judiciary and the statutory remedies provided by the legislature.[11] *In re American Metal Products Co.*, 276 F.2d 701, 704–705 (2d Cir. 1960); see *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 164–74, 659 A.2d 138 (1995). Because "foreclosure is peculiarly an equitable action . . . the court may entertain such questions as are necessary to be determined in order that complete justice may be done." *Hartford Federal Savings & Loan Assn.* v. *Lenczyk*, 153 Conn. 457, 463, 217 A.2d 694 (1966); see *Chappell* v. *Jardine*, 51 Conn. 64, 69 (1883) (court of equity can devise appropriate remedy for enforcement of lawful lien). In exercising its equitable discretion, however, the court must

---

[11] Both by common-law rule and by statute, a mortgagee in Connecticut is deemed to have taken legal title under the execution of a mortgage on real property. *Conference Center, Ltd.* v. *TRC*, 189 Conn. 212, 218, 455 A.2d 857 (1983); *State* v. *Stonybrook, Inc.*, 149 Conn. 492, 496, 181 A.2d 601, cert. denied, 371 U.S. 185, 83 S. Ct. 265, 9 L. Ed. 2d 227 (1962). Nonetheless, the mortgagee's legal title is a defeasible fee "subject to [an equitable] right of redemption which persists until it is extinguished by an action of foreclosure." *State* v. *Stonybrook, Inc.*, supra, 496. Even after the initiation of a foreclosure action, the mortgagee's title does not become absolute until all eligible parties have failed to exercise their rights to redeem the property. *City Lumber Co. of Bridgeport, Inc.* v. *Murphy*, 120 Conn. 16, 19, 179 A. 339 (1935).

comply with mandatory statutory provisions that limit the remedies available to a foreclosing mortgagee. *Naugatuck Savings Bank* v. *Fiorenzi*, 232 Conn. 294, 305, 654 A.2d 729 (1995). It is our adjudicatory responsibility to find the appropriate accommodation between applicable judicial and statutory principles. "Just as the legislature is presumed to enact legislation that renders the body of the law coherent and consistent, rather than contradictory and inconsistent . . . [so] courts must discharge their responsibility, in case by case adjudication, to assure that the body of the law—both common and statutory—remains coherent and consistent." (Citations omitted.) *Fahy* v. *Fahy*, 227 Conn. 505, 513–14, 630 A.2d 1328 (1993).

The equitable nature of foreclosure proceedings persuades us that § 49-15 does not preclude the trial court from exercising its discretion to open the judgment of strict foreclosure in the circumstances of this case. To apply the statutory mandate that, "after title [to real estate] has become absolute in any encumbrancer," a judgment of foreclosure cannot be opened, we must identify the property for which "title has become absolute." The statute describes the relevant property as the "real estate" that was the subject of the initial foreclosure judgment. On its face, the statute makes no distinction between partial and total foreclosures. Whether the statute bars the bank's motion to open and amend the initial strict foreclosure judgment depends, therefore, on whether the terms of the 1994 foreclosure vested title in the bank to two or to three parcels of land. The trial court has the authority to determine the scope of the initial foreclosure judgment, and, therefore, whether the foreclosure judgment properly may be opened under § 49-15.

Before exercising its discretion to open the initial foreclosure to permit the bank to amend its complaint, the trial court properly held a hearing to assist it in

deciding what property was covered by the original 1994 foreclosure judgment. See *Hartford Federal Savings & Loan Assn.* v. *Lenczyk*, supra, 153 Conn. 463 (inquiry into relevant circumstances was required to fulfill judiciary's equitable obligation "in order that complete justice may be done"). In this case, it was entirely reasonable for the court to conclude that the original foreclosure judgment encompassed only the two vacant parcels and not the third improved parcel. The foreclosure complaint itself was so limited, and the defendants conceded that "the Bank's mortgage remains on the third parcel . . . ."

The legal effect of the bank's inadvertent omission was that the title to the third parcel remained under a cloud. As would be true for any mortgaged property in Connecticut before foreclosure, the bank's title was a fee simple subject to defeasance by the defendants' exercise of their equity of redemption. *State* v. *Stonybrook, Inc.*, 149 Conn. 492, 496, 181 A.2d 601, cert. denied, 371 U.S. 185, 83 S. Ct. 265, 9 L. Ed. 2d 227 (1962). Thus, the bank's title to the third parcel was not absolute. Because no one had absolute title to the third parcel at the time of the bank's motion to open and to amend, § 49-15 did not limit the jurisdiction of the trial court to exercise its equitable discretion and modify the scope of the 1994 foreclosure judgment with respect to the third parcel.

Moreover, as best we can determine, the legislature's purpose in enacting § 49-15 was not to preclude amendment to correct scrivener's errors, but rather to set out an orderly framework for a mortgagee's exercise of the equity of redemption.[12] We have no access to the

---

[12] The Appellate Court relied upon several Connecticut cases in concluding that a judgment of foreclosure cannot be opened, in any circumstances, after title has become absolute in the encumbrancer. We conclude, however, that the cases from this court are distinguishable, because they deal with extinguishment of the *mortgagor's* right of redemption after passage of the law day. See *Varanelli* v. *Luddy*, 130 Conn. 74, 77, 32 A.2d 61 (1943); *Crane*

legislative history of § 49-15 because the original statute was enacted prior to the inauguration of published legislative history in 1945.[13] Legislators' remarks on subsequent amendments to § 49-15, however, emphasize that the purpose of § 49-15 is to ensure equitable foreclosure proceedings. For example, in 1967, when Public Acts 1967, No. 286 was enacted to delete a reference to the Circuit Court term, Representative Milton Caplan spoke in favor of the amendment, asserting that it "would permit a party equitably to come before the court and ask to reopen a judgment of foreclosure." 12 H.R. Proc., Pt. 6, 1967 Sess., p. 2717. Speaking in favor of Public Acts 1975, No. 75-11, which clarified that a court could open a judgment of foreclosure prior to the passage of the law day, even if that occurred in a subsequent court term, Representative James T. Healey explained that the bill "states specifically that the power of the court to reopen the judgment and extend the law day exists up until such time as the time for redemption has passed; in other words, [until] a person's rights have expired completely. It is a matter of equity and fairness . . . ." 18 H.R. Proc., Pt. 2, 1975 Sess., pp. 904–905.

Although the foregoing legislative remarks focus on the protection of the mortgagor's equity of redemption

v. *Loomis*, 128 Conn. 697, 700, 25 A.2d 650 (1942). By contrast, in this case we consider whether a *mortgagee* may open a judgment of foreclosure in order to amend an inadvertent omission.

In one case from the Appellate Court; *Burritt Interfinancial Bancorporation* v. *Wood*, 33 Conn. App. 401, 408, 635 A.2d 879 (1994); that court applied § 49-15 to preclude a plaintiff bank from opening a judgment of strict foreclosure. In that situation, however, the bank had learned of the defendant's bankruptcy before the defendant's law day had run and had failed to move to open the judgment to stop the law day from running. The facts of that case are far removed from the unintentional omission in this situation.

[13] The statute that became § 49-15 initially was enacted in 1923; Public Acts 1923, c. 145; and was revised in the General Statutes enacted in 1930; General Statutes (1930 Rev.) § 5084; and 1949. General Statutes (1949 Rev.) § 7196.

rather than on the scope of a trial court's authority to open a foreclosure judgment, they shed some light on the purpose of § 49-15 and on its intended impact. First, the legislative history of those amendments emphasizes the legislature's understanding of foreclosure as an equitable proceeding and the consequent duty of the court to do justice to protect the rights of all the interested parties. Second, the remarks imply that the legislature's purpose in barring courts from opening a judgment, after the mortgagor's failure to redeem, was not to limit the mortgagee from further pursuit of its newly vested property rights but rather to prohibit the mortgagor from subsequent challenges to the enforceability of the mortgagee's property rights.

Neither the text of § 49-15 nor the purpose that it was intended to serve requires us to construe the statute so broadly that it would preclude trial courts from exercising their equitable discretion to correct inadvertent omissions in mortgage foreclosure proceedings. The defendants have not alleged that the bank's error caused them, in any way, to change their position to their detriment. The defendants were aware that a mortgage deed "remain[ed] unreleased on the land records . . . ." *New Milford Savings Bank* v. *Jajer*, supra, 44 Conn. App. 596. In these circumstances, if the defendants were to prevail on this issue, they would receive an unexpected and unjust windfall. Thus, as a matter of statutory construction, we conclude that § 49-15 does not deprive the trial court of jurisdiction to open a judgment of foreclosure to correct an inadvertent omission in a foreclosure complaint.

B

As support for its construction of § 49-15, the Appellate Court also relied on the proposition that "a mortgage cannot be foreclosed piecemeal . . . ." *New Milford Savings Bank* v. *Jajer*, supra, 44 Conn. App.

595. We reject so categorical a limitation on the rights of a mortgagee.[13a] We need not decide, in this case, whether to go as far as the Nebraska Supreme Court, which held that, even for an intentional omission of mortgaged property, "[t]he bank's action against [one parcel] does not deny it the right to enforce its multiple security interests in further actions involving different parties and different parcels of land." *Dupuy* v. *Western State Bank*, 221 Neb. 230, 237, 375 N.W.2d 909 (1985). At least in the circumstances of this case, in which the bank inadvertently omitted the third parcel from the original foreclosure action, we can discern no persuasive reason to preclude a subsequent foreclosure on the omitted parcel as a matter of law.[14] On this record there is no basis for a claim that the bank waived its rights to such a foreclosure.[15] We conclude that, consistently with its authority to exercise its equitable discretion in foreclosure proceedings, the trial court must be afforded the authority to open judgments on a case-by-case basis "in order that complete justice may be done." *Hartford Federal Savings & Loan Assn.* v. *Lenczyk*, supra, 153 Conn. 463.

Our decision to permit partial foreclosures to be opened in appropriate circumstances is supported by

[13a] Our decision in this case is limited to foreclosures involving an original mortgagor and mortgagee, and does not address the possible rights of third parties. See *Stein* v. *Hillebrand*, 240 Conn. 35, 44–47, 688 A.2d 1317 (1997) ("[T]he plaintiff, having knowingly acquiesced to the terms of the mortgage, is not merely a third party to that mortgage.").

[14] The cases to the contrary, on which the Appellate Court relied; *Matter of Silverman*, 10 B.R. 734, 736 (S.D.N.Y. 1981), aff'd, 37 B.R. 200 (S.D.N.Y. 1982); *Bankers Trust Co.* v. *G. H. Equities, Inc.*, 57 App. Div. 2d 601, 602, 394 N.Y.S.2d 30 (1977); *Bodner* v. *Brickner*, 29 App. Div. 2d 441, 446, 288 N.Y.S.2d 342 (1968); *Dooly* v. *Eastman*, 28 Wash. 564, 576, 68 P. 1039 (1902); all involve the rights of a mortgagee after the mortgagee intentionally elected not to foreclose on one of several parcels securing the mortgage.

[15] "Waiver is the intentional relinquishment of a known right." (Internal quotation marks omitted.) *Majernicek* v. *Hartford Casualty Ins. Co.*, 240 Conn. 86, 96, 688 A.2d 1330 (1997); *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 251–52, 618 A.2d 506 (1992). It is also a question of fact. *Majernicek* v. *Hartford Casualty Ins. Co.*, supra, 96. Because the bank's omission of the third parcel from its original foreclosure complaint was

public policy considerations. We agree with the Nebraska Supreme Court's observation that an unconditional ban on partial foreclosures might well disserve all the interested parties because "requiring foreclosure upon all properties would needlessly involve the additional properties in litigation." *Dupuy* v. *Western State Bank,* supra, 221 Neb. 237; see *Michigan National Bank* v. *Martin,* 19 Mich. App. 458, 463–64, 172 N.W.2d 920 (1969).[16]

Furthermore, our conclusion is consistent with the law governing marshalling. Marshalling, an equitable principle, *requires* a mortgagee, in the case of a mortgage secured by several parcels of real estate, to foreclose first on those parcels that do not secure junior encumbrances.[17] Restatement (Third), Property, Mort-

unintentional, it did not constitute a knowing waiver of the mortgage on that parcel. We disagree, therefore, with the Appellate Court's implied reliance on waiver to sustain its argument that partial foreclosures are improper. *New Milford Savings Bank* v. *Jajer,* supra, 44 Conn. App. 588.

[16] We do not address the problems that the bank might have faced if, instead of petitioning for an opening of the mortgage foreclosure, it had filed a separate cause of action to foreclose on the omitted third parcel. Possibly, such an action might have raised questions about the applicability of the law of claim preclusion or of issue preclusion. See, e.g., *Connecticut Natural Gas Corp.* v. *Miller,* 239 Conn. 313, 322–23, 684 A.2d 1173 (1996); *Delahunty* v. *Massachusetts Mutual Life Ins. Co.,* 236 Conn. 582, 589, 674 A.2d 1290 (1996); *Scalzo* v. *Danbury,* 224 Conn. 124, 127, 617 A.2d 440 (1992); *Duhaime* v. *American Reserve Life Ins. Co.,* 200 Conn. 360, 364, 511 A.2d 333 (1986).

[17] Caron writes: "Were the court to permit an equitable apportionment of the plaintiff's debt as part of a decree of strict foreclosure, each parcel could be redeemed, by either the owner or a subsequent encumbrancer, by payment of that portion of the debt apportioned to the parcel at issue. In essence, the blanket mortgage is treated as though it were a number of smaller mortgages on the separate parcels, and the foreclosure of each such smaller mortgage proceeds independently from others." D. Caron, Connecticut Foreclosures: An Attorney's Manual of Practice and Procedure (3d Ed. 1997) § 16.01A, p. 429.

The procedural posture of this case is different from the situation described by Caron because the bank here, rather than seeking equitable apportionment, chose to foreclose the blanket mortgage in its entirety, albeit inadvertently omitting the description of one of the parcels securing the mortgage. It is, thus, the bank's attempt to open the foreclosure judgment that has become the subject of this appeal. Caron's description of equitable

gages § 8.6, p. 633 (1997);[18] see D. Caron, Connecticut Foreclosures: An Attorney's Manual of Practice and Procedure (3d Ed. 1997) § 16.01A, p. 429; see also *Bryson* v. *Newtown Real Estate & Development Corp.*, 153 Conn. 267, 271–72, 216 A.2d 176 (1965). Implicit in the concept of marshalling is the understanding that a mortgagee does not waive an encumbrance on one of the parcels securing a mortgage by first foreclosing on other parcels. As long as junior lien creditors on all parcels securing the mortgage are made defendants in the foreclosure,[19] so that they have an opportunity to request an apportionment if appropriate, partial foreclosure neither waives the mortgagee's encumbrance nor impairs the rights of other interested parties.[20] In this case,

---

apportionment in the strict foreclosure context, however, reinforces our conclusion that the bank has not "waived" its mortgage on the third parcel by inadvertently omitting its description from the original foreclosure complaint.

[18] Section 8.6 of the Restatement (Third) of Property, Mortgages, provides: "[W]hen foreclosing a *mortgage covering more than one parcel of real estate,* upon the motion or application of the holder of a subordinate interest protected by this section, the mortgagee must proceed against the parcels in the following order:

"(1) parcels on which no subordinate interests exist are foreclosed upon before parcels on which subordinate interests exist; and

"(2) as among parcels on which subordinate interests exist, those with subordinate interests created more recently are foreclosed upon before those with subordinate interests created at a more remote time." (Emphasis added.)

[19] The three creditors having junior encumbrances on the mortgaged property in this case—Sears, Roebuck & Co., Waterbury Telephone Employees Federal Credit Union, and the state department of revenue services— received notice of the foreclosure on parcels one and two. On May 12, 1995, the trial court entered a default for failure to appear against Sears, Roebuck & Co. On that same day, the trial court rendered a judgment of default for failure to plead against Waterbury Telephone Employees Federal Credit Union and the state department of revenue services. Although the state appeared, it disclaimed its interest under its lien on May 12, 1995.

[20] Another equitable principle in the strict foreclosure context points toward a similar conclusion. If "all the property covered by a mortgage has been sold in parcels to different purchasers at different times, upon foreclosure of the mortgage the parcels are liable in inverse order of alienation." *New England Mortgage Realty Co.* v. *Rossini*, 121 Conn. 214, 216,

because all the junior lienors held security interests in all three parcels of land, no junior encumbrancer was deprived of the opportunity to petition for an apportionment.[21]

Accordingly, we conclude that the Appellate Court improperly determined that § 49-15 deprived the trial court of jurisdiction, in the circumstances of this case, to open the judgment of foreclosure.

II

The Appellate Court further concluded that, even if the bank's original foreclosure judgment in 1994 did not include the third parcel, the mortgage on that parcel had become unenforceable because of the bank's failure to enforce its right to a deficiency judgment against the defendants. General Statutes § 49-14.[22] Relying on § 49-1, the court stated that "a judgment of strict foreclosure extinguishes all rights of the foreclosing mortgagee on the underlying note, with the exception of rights enforceable through the use of the deficiency judgment procedure under General Statutes § 49-14. . . . [A]fter the judgment of foreclosure and the running of the law days, the [bank] is no longer able to foreclose that

---

183 A. 744 (1936). Again, this procedure implies that a mortgagor does not waive a mortgage on omitted parcels by foreclosing on only some of the land securing the mortgage.

[21] Even if the liens of the junior creditors had been limited to the third parcel, they chose not to assert their lien rights at any time during these proceedings.

[22] General Statutes § 49-14 provides in relevant part: "(a) At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment. . . ."

mortgage because the underlying note has been extinguished." *New Milford Savings Bank* v. *Jajer,* supra, 47 Conn. App. 595–96. We disagree.

The defendants argue that, under § 49-1, foreclosure of a mortgage bars both *in rem* and *in personam* actions on a mortgage debt. They assert that the language of § 49-1 precludes further action of both types against any person liable for such payment over whom the court could assert *in personam* jurisdiction. We reject this construction of the statute.

We begin our analysis of § 49-1 by observing that, textually, the section does not address a foreclosing mortgagee's right to enforce its interest in property that remains subject to an unreleased mortgage on the land records and that was not the subject of any previous foreclosure. Section 49-1 makes a mortgage foreclosure "a bar to any further action *upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof* who are made parties to the foreclosure . . . ." (Emphasis added.)

This text poses a serious problem for the defendants. The statute addresses the mortgagee's right to pursue *personal* remedies against the mortgagors with respect to their *personal* obligations on the underlying instrument of debt.[23] It does not address the mortgagee's

---

[23] The legislative history of the 1957 amendment to the statute, Public Acts 1957, No. 443, reinforces our conclusion that the purpose of § 49-1 is to bar only further personal liability on a mortgage note following foreclosure of the mortgage. Speaking in support of Senate Bill No. 834, which added the language limiting the application of § 49-1 to individuals subject to service of process in this state, Senator John Filer stated: "[A] foreclosure of a mortgage bars further action *on the note* unless the person is liable for payment or made party to the foreclosure. We now add that the bar exists only if service of process could have been made on such persons in this State." (Emphasis added.) 7 S. Proc., Pt. 3, 1957 Sess., p. 1842, remarks of Senator Filer. In the General Law Committee, as well, Robert Hildengay, testifying in favor of Senate Bill No. 834, described it as a limitation on *personal liability* following foreclosure. Prefacing his remarks, he stated: "Mortgagees, under our law, have alternative rights. They may bring action

right to pursue, instead, its *in rem* remedies against the mortgaged property. See *Hodge* v. *Hodge*, 178 Conn. 308, 313, 422 A.2d 280 (1979) ("an action in rem is an action brought to enforce or protect a pre-existing interest in particular property" [internal quotation marks omitted]). Whether the statute should be construed as impliedly barring an *in rem* remedy depends on whether, in expressly barring an *in personam* remedy, the statute has extinguished the mortgage debt itself.

As a general proposition, it is established law that the mortgage bears a close relationship to the underlying debt. The mortgage secures the debt. *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 759, 680 A.2d 301 (1996); Restatement (Third), supra, § 1.1, p. 8. The mortgage follows the debt, in the sense that the assignment of the note evidencing the debt automatically carries with it the assignment of the mortgage. *Waterbury Trust Co.* v. *Weisman*, 94 Conn. 210, 218–19, 108 A. 550 (1919); Restatement (Third), supra, § 5.4, p. 380. The mortgage cannot survive the extinction of the debt. *Hartford National Bank & Trust Co.* v. *Kotkin*, 185 Conn. 579, 581, 441 A.2d 593 (1981).

It is also established law, however, that, upon the default of the mortgagor, the mortgagee has multiple remedies against both the mortgagor and the mortgaged property. "[T]he plaintiff is entitled to pursue its remedy at law on the notes, or to pursue its remedy in equity upon the mortgage, or to pursue both. A note and a mortgage given to secure it are separate instruments, executed for different purposes and, in this State, action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in

on the note [as well as foreclosure]. . . ." Conn. Joint Standing Committee Hearings, General Law Committee, Pt. 1, 1957 Sess., p. 161, remarks of Hildengay.

a foreclosure suit." (Internal quotation marks omitted.) *Hartford National Bank & Trust Co.* v. *Kotkin,* supra, 185 Conn. 581; see *Wendell Corp. Trustee* v. *Thurston,* 239 Conn. 109, 116, 680 A.2d 1314 (1996); *New England Savings Bank* v. *Bedford Realty Corp.,* supra, 238 Conn. 759. Under our cases, a mortgagee's failure to pursue a deficiency judgment is not an election of remedies and does not, per se, extinguish the debt so as to preclude further equitable relief by way of foreclosure on the mortgaged property.[24]

We are not persuaded that the legislature intended § 49-1, by barring further action "against the person or persons who are liable for the payment thereof," to extinguish the defendants' personal liability as well as their mortgage debt.[25] Restatement (Third), supra, § 1.1, p. 8 ("[a] mortgage is enforceable whether or not any person is personally liable for that performance"). By barring action on the mortgage debt, § 49-1 proscribes a remedy, but does not eliminate the underlying debt. See, e.g., *Markham* v. *Smith,* 119 Conn. 355, 359, 176 A. 880 (1935) ("the statute of limitations does not destroy the debt but merely bars the remedy"). Because the statute does not speak to the continued existence of the mortgage debt, it does not supersede the bank's continuing access to equitable foreclosure proceedings.[26]

---

[24] The parties dispute the meaning of *Swift* v. *Edson,* 5 Conn. 532 (1825), an early case from this court. The bank asserts that *Swift* stands for the proposition that as long as a valid mortgage exists, the underlying debt is not extinguished and thus can be pursued in a second foreclosure. The defendants attempt to distinguish *Swift,* arguing that that case involved a second mortgagee who had not been named as a party in the first proceeding. Because, however, at the time of *Swift,* neither § 49-1 nor § 49-15 had been enacted, that case does not inform our decision in this case.

[25] The bank concedes in its brief that it can no longer recover from the defendants personally. All that is at issue in this appeal is whether the bank may foreclose on the third parcel.

[26] Because the bank's inadvertent omission of the third parcel from its foreclosure complaint did not extinguish the underlying debt, the mortgage on the third parcel retains continued vitality. Accordingly, we do not address

If the Appellate Court finds no merit in the remaining issues raised by the defendants in that court, the trial court, on remand, will need to consider the extent of the bank's continuing mortgage interest in light of its past foreclosure of the mortgage with respect to the first and second parcels. If the bank decides to pursue an action for foreclosure, it must establish the amount of the mortgage debt. *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 238 Conn. 760 ("[i]n pursuing the remedy of strict foreclosure [the mortgagee] or its assignee nevertheless will have to establish the amount of the debt that [the defendant] owes"). The bank must assume the burden of proving the amount by which that debt has been diminished by its acquisition of fee title to parcels one and two.[27]

The judgment of the Appellate Court is reversed and the case is remanded to that court for its consideration of the remaining issues raised by the defendants' appeal.

In this opinion the other justices concurred.

---

the defendants' argument that the bank's mortgage on the third parcel may be extinguished in accordance with General Statutes § 49-13, entitled "Petition for discharge of mortgages or of ineffective attachment, lis pendens or lien. Damages."

[27] The text of § 49-14 (a), dealing with deficiency judgments, is set out in footnote 22 of this opinion. In a strict foreclosure action, the purpose of the hearing provided in § 49-14 (a) is to determine the fair market value of the property. *New England Savings Bank* v. *Lopez*, 227 Conn. 270, 278, 630 A.2d 1010 (1993); *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, 220 Conn. 643, 646 n. 8, 600 A.2d 1 (1991). "This section applies only to deficiency judgments in strict foreclosure actions." Id.