ROSEMARY YOUNG *v.* DOUGLAS S. YOUNG ET AL.
(AC 23123)
DOUGLAS S. YOUNG *v.* ROSEMARY YOUNG
(AC 23121)

Schaller, Dranginis and Hennessy, Js.

Argued March 26—officially released July 29, 2003

*Douglas S. Young*, pro se, the appellant (named defendant in the first case, plaintiff in the second case).

*Joseph A. Kriz*, with whom, on the brief was *Ivan Hirsch*, for the appellee (plaintiff in the first case, defendant in the second case).

*Opinion*

HENNESSY, J. Douglas S. Young, the plaintiff in AC 23121 and the named defendant in AC 23123, appeals from the judgment of the trial court in AC 23121 denying his application for a writ of audita querela[1] and from

---

[1] "A writ of audita querela is a writ issued to afford a remedy to a defendant against whom judgment had been rendered, but who had new matter in defense . . . arising, or at least raisable for the first time, after judgment." (Internal quotation marks omitted.) *Ruiz* v. *Gatling*, 73 Conn. App. 574, 574 n.2, 808 A.2d 710 (2002).

the judgment of the trial court in AC 23123 denying his motion to open the judgment in a summary process action. He claims that the court improperly concluded that an escrow agreement between himself and his mother, Rosemary Young, the defendant in AC 23121 and the plaintiff in AC 23123, no longer existed and, therefore, he could not complete the terms of the agreement.[2] We affirm the judgment of the trial court denying the application for audita querela and dismiss the appeal from the denial of the motion to open the summary process judgment.

These appeals come to this court after a long history of litigation between the parties.[3] The following facts are relevant to the resolution of these appeals. The property that is the subject of these appeals is at 28 Lighthouse Point, Fairfield. The property is owned by Rosemary Young, the mother of Douglas Young. Douglas Young currently lives in a house on the property with his wife and children. On October 19, 1994, the mother and son entered into an agreement to transfer ownership of the property to the son. At that time, the mother signed a quitclaim deed transferring ownership of the property, and the son's attorney, acting as escrow agent, was to hold the deed until the terms of the agreement were completed. The terms of the escrow agreement were not completed and, on April 22, 1997, the mother instituted a summary process action, pursu-

---

[2] The plaintiff, Douglas Young, is the son of the defendant, Rosemary Young.

[3] The first action, AC 23123, was a summary process action by Rosemary Young against Douglas Young and his wife, Maureen Young, to vacate the premises. Only Douglas Young appealed from the court's decision to deny his motion to open the judgment in the summary process action. The second action, AC 23121, involved an application for a writ of audita querela filed by Douglas Young, alleging that he is the true owner of the property that is the subject of this dispute.

In a third action, the defendant alleged that the plaintiff wrongfully obtained the deed to the property. That action is not involved in this appeal.

ant to General Statutes § 47a-23a, seeking to evict the son and his family from the property.

The court found that the quitclaim deed did not divest the mother of ownership of the property because the deed was given to the son's attorney to be held in escrow until he paid $12,000 to the attorney. The court concluded that the son's prior right or privilege of possession had terminated and, on April 17, 1998, rendered judgment of possession in favor of the mother. See *Young* v. *Young*, 64 Conn. App. 651, 652–54, 781 A.2d 342, cert. denied, 258 Conn. 908, 782 A.2d 1255 (2001).

On April 20, 1998, the son filed a motion to reargue pursuant to Practice Book § 11-11. On May 4, 1998, the trial court denied the son's motion to reargue, and the son appealed to this court. *Young* v. *Young*, supra, 64 Conn. App. 654.[4] On remand from the Supreme Court, this court affirmed the judgment of the trial court and concluded that there had been an escrow agreement between the parties, that there was no delivery of a quitclaim deed from the mother to the son and, therefore, that the son did not own the property. *Young* v. *Young*, supra, 64 Conn. App. 652. This court did not address the current status of the escrow agreement and whether the terms could still be completed. See footnote 6. This court's decision was officially released on July 31, 2001. On August 3, 2001, the son tendered the sum of $12,000 to the escrow agent's former law firm accompanied by a letter from his attorney.[5] The

---

[4] After this court dismissed the appeal, the Supreme Court reversed our decision and remanded the matter to this court. See *Young* v. *Young*, 249 Conn. 482, 487, 733 A.2d 835 (1999).

[5] Brian Lambeck, the attorney for the defendants, Douglas Young and Maureen Young, in the summary process action, wrote a letter to the escrow agent's former firm, stating: "[T]he Appellate Court released its decision wherein it indicated that you are holding the deed in escrow conditioned upon [the defendant] paying you $12,000. In said file is the original deed from [the plaintiff] to my client. Enclosed please find a bank check made payable to your firm as Trustee in the amount of $12,000. Please acknowledge receipt of said sum and the delivery of the deed, to me in writing at your earliest convenience."

son obtained the quitclaim deed and recorded it in the land records on October 1, 2001.

On May 3, 2002, the son filed a motion to open the judgment and a motion to substitute himself for his mother as the party plaintiff, alleging that he was the holder of legal record title to the property and that summary process is a remedy available only to an "owner." The court held a hearing on May 22, 2002. According to the son's attorney, if the court granted his motion to open the judgment and to substitute himself as the party plaintiff, the son would then withdraw the action. The court responded, "Oh, come on. We can't do that. There's really a fraud on the court to even suggest that. I'm concerned." On the same day, the court denied the son's motion. In AC 23123, the son appealed from the court's denial of the motion to open the judgment. The issues and arguments involved in appealing from the court's denial of the motion to open the judgment are identical to those discussed in AC 23121.[6] The son did not file a motion for articulation, and the brief is grossly inadequate. That appeal, AC 23123, therefore is dismissed. See *Rosenblit* v. *Williams*, 57 Conn. App. 788, 796, 750 A.2d 1131, cert. denied, 254 Conn. 906, 755 A.2d 882 (2000); see also *Resurreccion* v. *Normandy Heights, LLC,* 76 Conn. App. 642, 647–48, 820 A.2d 1116, cert. denied, 264 Conn. 917, 826 A.2d 1159 (2003).

We now turn our attention to AC 23121. The following additional facts are relevant to that appeal. On April 17,

---

We note that the "[d]elivery of a deed coupled with intent by the grantor to pass title is necessary for a valid conveyance. . . . The delivery of a deed includes not only an act by which the grantor parts with the possession of it, but also a concurring intent on the part of the grantor that it shall vest the title in the grantee. . . . Both elements involve questions of fact for the trier of fact." (Citations omitted; internal quotation marks omitted.) *McCook* v. *Coutu,* 31 Conn. App. 696, 701, 626 A.2d 1321, cert. denied, 227 Conn. 911, 632 A.2d 692 (1993).

[6] The son filed an identical brief in both of the appeals currently before this court.

1998, the trial court rendered judgment of possession in favor of the mother in the summary process action. The court's judgment also addressed the current validity of the escrow agreement. The court found that there had been no delivery of the deed to the son, and that he had abandoned his claim of complete ownership and had sought a life estate in the property. The court stated, inter alia: "Clearly, by this time [the son] had abandoned any notion of having acquired title by the quitclaim deed, which was executed October 19, 1994. The court infers that even [the son] realized that the deed had not been delivered and that more than a reasonable time had passed from the time of the quitclaim deed execution in October, 1994, to November, 1996, when he was willing to negotiate a rental amount for the subject premises." The court also concluded that because delivery of the quitclaim deed had not taken place, the mother was free to alter the conditions of the escrow. The court stated: "Since there was no delivery, there could be not be a valid conveyance, and until the time of delivery, the [mother] could withdraw or nullify the pending transfer by her acts and deeds, such as the institution of eviction against the [son]." In concluding, the court stated succinctly: "The quitclaim deed is not valid. There is no quitclaim deed."[7]

Following this court's prior decision and the son's recording of the deed in the land records, the son initiated a separate action by filing an application for writ of audita querela on May 3, 2002, claiming that he was the holder of legal record title to the property and,

---

[7] It is noted that the son, in the original appeal, did not appeal to this court on the issue of the current validity of the quitclaim deed or whether the escrow agreement was still viable. See *Young* v. *Young*, supra, 64 Conn. App. 652. He appealed only from the court's judgment that an escrow had been created rather than an outright transfer of the property and whether the conditions of that agreement to transfer the property had been met.

therefore, that summary process execution should not be allowed to proceed.[8]

On May 22, 2002, the court held a hearing on the application for the writ of audita querela. The court heard testimony from both the mother and the son. The court concluded that the son did not come to court with clean hands and that "the [son] knew that this court had decided in a summary process action, which preceded the audita querela, for its application now being made. [The son] knew this court had ruled there was no escrow. The escrow agreement had been revoked, if no other way than by the institution of a summary process case. There was no escrow." The court also concluded that the original escrow agreement had been altered when the mother changed her demand from $12,000 to $50,000. The court found that the son knew that the original agreement had changed and therefore that he was not acting in good faith when he acquired the deed. On the basis of those conclusions, the court denied the son's application for a writ of audita querela. The son appealed from that denial.

On appeal, the son claims that the court improperly concluded that an escrow agreement between himself and his mother no longer existed and therefore that he could not complete the terms of the agreement. The son argues that the terms of the escrow agreement could not be altered or revoked once the deed was placed in the escrow agent's possession.[9] He further

[8] The son also claimed that the mother had acknowledged that he was the legal holder of the title because she filed a separate action on November 21, 2001, claiming that he wrongfully had obtained the deed to the property. That action is not involved in this appeal.

[9] The son also argues that an inter vivos gift cannot be revoked once delivered. The son has confused the delivery of an inter vivos gift and a deed held in escrow. This court affirmed the trial court's judgment that an escrow agreement had been formed. See *Young* v. *Young*, supra, 64 Conn. App. 652. The son is attempting to litigate for a second time, in this court, the issue of whether the agreement between the parties to the transfer of

argues that he has completed the terms of the agreement and duly recorded the deed to the property. The mother argues that the court was correct when it stated that the parties had abandoned the escrow agreement. We agree with the mother.

The court's conclusion that the parties abandoned an agreement ordinarily is a question of fact. *Rowe* v. *Cormier*, 189 Conn. 371, 373, 456 A.2d 277 (1983). The decision of the court involved a factual determination concerning the status of an escrow agreement, and our standard of review is whether the court's decision was clearly erroneous. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment. . . . Although we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses . . . we will not uphold a factual determination if we are left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Daniels* v. *Alander*, 75 Conn. App. 864, 869, 818 A.2d 106, cert. granted on other grounds, 264 Conn. 901, 823 A.2d 1219 (2003).

One manner in which an escrow agreement can be deemed invalid is by the actions of the parties subject to the agreement. "An escrow executed and deposited upon a valuable consideration is not revocable except according to the terms of the agreement and deposit. However, an escrow agreement may be mutually abandoned by the parties to it. The abandonment need not

---

the property was an inter vivos gift. Res judicata, therefore, applies, and that argument will not be addressed. See *Nastro* v. *D'Onofrio*, 76 Conn. App. 814, 819, 822 A.2d 286 (2003).

be marked with a formality equal to that used in establishing an escrow; any conduct inconsistent with the escrow is sufficient for the court to conclude it was abandoned, and thus, even if parties did not expressly agree to waive the escrow conditions or to abandon the agreement, a court may consider whether the facts sustain such an implication." 28 Am. Jur. 2d, Escrow § 8 (1992).

This court and our Supreme Court have addressed the issue of mutual abandonment of an agreement. "Mutual assent to abandon a contract, like mutual assent to form one, may be inferred from the attendant circumstances and conduct of the parties. . . . Our Supreme Court's conclusion . . . that parties are free to terminate an agreement by mutual assent has been followed in later cases. [T]he well-established rule [is] that rescission or abandonment of contracts, like entry into a contractual relation, depends upon the intent of the parties and that the relevant intent is to be inferred from the attendant circumstances and conduct of the parties." (Citations omitted; internal quotation marks omitted.) *Smith & Smith Building Corp.* v. *DeLuca,* 36 Conn. App. 839, 842–43, 654 A.2d 368 (1995); see also *Herman S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership,* 236 Conn. 750, 762, 674 A.2d 1313 (1996).

The court found that both parties had acted as if the escrow agreement no longer was in effect. The mother's attorney informed the escrow agent that the original demand of $12,000 for the property had been modified to $50,000. The escrow agent then communicated that modification to the son in writing and awaited the payment of $50,000. The mother altered the terms of the agreement, began eviction proceedings against the son and his wife and demanded rent. On February 19, 1997, more than two years after the escrow agreement originally was executed, the son's attorney wrote a letter

to the mother, stating that "[the son's] claim is that [the mother] wrote them a letter that they were to have use of [the property] during [the mother's] lifetime as long as they would pay the expenses relating to mortgage, insurance, etc."[10] The son's letter was an attempt to enforce that agreement concerning a life estate or to negotiate a new agreement. The letter does not mention ownership of the property or mention the deed held in escrow. It is obvious that the son did not consider the terms of the escrow agreement still to be effective. The court was correct when it stated that both parties had abandoned the escrow agreement to transfer the property.

The son cannot attempt to enforce an agreement after both parties' conduct has indicated that they have abandoned all claims to the agreement. The conclusion by the court that the parties abandoned the escrow agreement was supported by the evidence and is not clearly erroneous.

The appeal in AC 23123 is dismissed and the judgment in AC 23121 is affirmed.

In this opinion the other judges concurred.

---

[10] The letter also states that the original document outlining the agreement concerning the life estate was lost in a fire that did considerable damage to the property. The son is not attempting to enforce the alleged terms of the original letter.