CITIBANK, N.A., TRUSTEE (SACO 2007-2) *v.* DEBRA LINDLAND, EXECUTRIX (ESTATE OF MADLYN LANDIN), ET AL. (AC 32723)

DiPentima, C. J., and Lavine and Schaller, Js.

---

Argued May 18—officially released September 27, 2011

*Peter A. Ventre*, for the appellant (plaintiff).

*Barbara M. Schellenberg*, with whom were *David A. Ball* and, on the brief, *Philip C. Pires*, for the appellee (defendant Robert Olsen et al.).

*Opinion*

SCHALLER, J. This appeal requires us to determine whether the trial court had the authority to open a judgment of foreclosure by sale after title to the real property had been conveyed to the successful bidder, despite irregularities in the process. The plaintiff, Citibank, N.A., as trustee of SACO 2007-2, appeals from the judgment of the trial court granting a motion to open the judgment of foreclosure by sale filed by Robert Olsen,[1] the successful bidder in whom title to the foreclosed property had vested. On appeal, the plaintiff

---

[1] Olsen and 17 Ridge Road, LLC, were added as party defendants in May, 2009. The named defendant, Debra Lindland, executrix (estate of Madlyn Landin a/k/a Madlyn L. Landin and Madlyn Louise Landin) (estate), is not a party to the present appeal. The property was formerly owned by the estate, which defaulted on both the mortgage held by the plaintiff and a mortgage held by IndyMac Federal Bank, FSB. Debra Lindland, David Landin, Donna Hassler, Middlesex Hospital and the department of revenue services were also named as defendants but are not parties to this appeal.

claims that the court improperly (1) opened the judgment of foreclosure because it lacked authority to do so and (2) granted the motions to intervene as party defendants filed by Olsen and 17 Ridge Road, LLC.[2] We reverse the judgment of the trial court.

The court, *Holzberg, J.,* conducted an evidentiary hearing on Olsen's motion to open over the course of two days and issued a memorandum of decision dated August 5, 2009. The following facts and procedural history are undisputed and are relevant to the issues in the present appeal. On May 1, 2008, the plaintiff initiated a foreclosure action against Debra Lindland, executrix of the estate of Madlyn Landin (estate); see footnote 1 of this opinion; alleging that the estate had defaulted on a mortgage loan owed to the plaintiff, which was secured by property located at 17 Ridge Road in Cromwell. Importantly, the foreclosure complaint alleged that there was a mortgage prior in right to the plaintiff's mortgage. On July 10, 2008, in support of its motion for a judgment of strict foreclosure, the plaintiff filed with the court a foreclosure worksheet reflecting the absence of any equity in the property. Specifically, the worksheet disclosed: a fair market value of $305,000; the existence of a first mortgage in the amount of

---

[2] The plaintiff makes additional claims that go to the merits of the trial court's decision that it could, in the exercise of its broad equitable powers, open the judgments and afford relief to Olsen. These claims are that the application of the lis pendens statute; General Statutes § 52-325 (a); to the facts of this case renders the trial court's decision erroneous and that the negligence of Olsen's attorney, as his agent, cannot serve as a basis for the court to exercise jurisdiction or to provide relief. We do not reach these claims.

"Generally, the granting of a motion to open is not a final judgment from which an appeal will lie. . . . An appeal from the granting of a motion to open may be filed, however, where the authority of the trial court to do so is challenged. . . . Accordingly, we address [the plaintiff's] claims only insofar as they challenge the court's power to open the judgment." (Citations omitted; internal quotation marks omitted.) *Byars v. FedEx Ground Package System, Inc.,* 101 Conn. App. 44, 46 n.2, 920 A.2d 352 (2007).

$295,200; and a debt arising out of the plaintiff's second mortgage in the amount of $82,615.46.[3] The first mortgage was held by IndyMac Federal Bank, FSB (IndyMac), which had initiated a separate foreclosure action on its priority mortgage.

On August 4, 2008, the plaintiff's motion for judgment of strict foreclosure appeared on the short calendar. Judge Holzberg found incorrectly that there was substantial equity in the property justifying a sale[4] pursuant to General Statutes § 49-24[5] et seq. rather than strict foreclosure. Specifically, the court, in its foreclosure orders, found an updated debt of $82,615.46 and a fair market value of $305,000, but did not reference IndyMac's priority debt of $295,200. The court appointed a committee for sale, which proceeded with a sale on October 8, 2008. The committee prepared a notice to bidders that set forth the liens that were prior in right to the plaintiff's lien. The notice referred only to certain municipal taxes and did not mention the IndyMac mortgage or that the purchaser would take the property subject to any mortgage. The committee read the notice aloud prior to the commencement of the sale. On the basis of expert testimony presented at the hearing, the

[3] Although the worksheet showed a negative equity in the amount of $12,815.46, the parties agree that calculation is incorrect and that the actual negative equity at the time was $72,815.46.

[4] The court found in its memorandum of decision that it had made this erroneous determination at that earlier stage of the proceedings. The court also found, however, that the behavior of the plaintiff's counsel was "highly relevant." Specifically, the court noted that the plaintiff's counsel was aware of the IndyMac mortgage when the court entered the judgment of foreclosure by sale. He was, in fact, the same counsel of record in the IndyMac foreclosure action and his firm filed the notice of lis pendens on the land records with respect to both foreclosures.

[5] General Statutes § 49-24 provides: "All liens and mortgages affecting real property may, on the written motion of any party to any suit relating thereto, be foreclosed by a decree of sale instead of a strict foreclosure at the discretion of the court before which the foreclosure proceedings are pending."

court concluded that the cumulative effect of these omissions resulted in a sale that was misleading to potential buyers.[6]

Olsen was the successful bidder at the sale with a high bid of $216,000. Following the sale, the committee prepared a bond for deed that was executed by Olsen, who delivered a deposit in the amount of $30,500. The deed disclosed only that certain municipal taxes were prior in right to the plaintiff's mortgage. It did not mention the IndyMac mortgage. The court, *Jones, J.*, approved the sale on December 10, 2008.

At the closing on January 21, 2009, Olsen tendered the balance of the purchase price. The committee delivered the committee deed to Olsen. Relying on the title assurances provided by his attorney; see footnote 6 of this opinion; Olsen transferred his interest in the property to 17 Ridge Road, LLC (LLC), of which Olsen is a one-half owner, by way of a quitclaim deed that was recorded on the land records moments after the committee deed was recorded. Following the closing, Olsen and his partner in LLC cleaned the property, plowed the snow, restored the electricity and paid the outstanding municipal taxes. On Sunday, April 12, 2009, Olsen discovered a lock box on the property preventing his access to it. IndyMac had taken title to and possession of the property as a result of its foreclosure action on its priority mortgage. LLC's interest in the property had been foreclosed.

On April 23, 2009, Olsen filed a motion to be joined as a party to the present action and, on April 24, 2009, LLC filed a similar motion. Olsen also filed a motion to open and vacate the judgment of foreclosure by sale

---

[6] In addition to the foregoing defects and omissions in the sale process itself, the court found that Olsen was misled because of certain failures by his own counsel who, inter alia, issued to Olsen a title insurance policy that failed to except the IndyMac mortgage.

and all supplemental judgments, seeking as relief an order of restitution directing that the $216,000 that he paid for the purchase of the property, less the costs of the sale, be returned to him. The plaintiff objected, raising various grounds, including arguments that the court lacked jurisdiction to open the judgment once title had passed and that Olsen and LLC lacked standing to intervene as party defendants. The court, finding that Olsen's predicament arose from a "series of cascading mistakes" in the foreclosure process, resolved the jurisdictional challenges in Olsen's favor and granted his motion to open the judgment. This appeal followed.

I

The plaintiff claims that the court lacked jurisdiction to open the judgment of foreclosure by sale once both the confirmation of the sale and transfer of title had occurred.[7] Olsen raises a number of arguments in response, which we will address in turn. Although the plaintiff frames the issue as one of subject matter jurisdiction, we conclude, more precisely, that the court lacked the authority to open the judgment of foreclosure by sale because title had vested in the purchaser.

---

[7] The plaintiff argues, inter alia, that General Statutes § 49-15, which pertains to strict foreclosure, is "subsume[d]" by General Statutes § 49-26, which pertains to foreclosure by sale. In § 49-15, the legislature crafted a protocol for opening and modifying judgments of strict foreclosure notwithstanding the four month limitation imposed by General Statutes § 52-212a. *Falls Mill of Vernon Condominium Assn., Inc.* v. *Sudsbury,* 128 Conn. App. 314, 319, 15 A.3d 1210 (2011). In response, Olsen maintains that because a successful bidder at a foreclosure sale does not receive the same procedural protections as a mortgagor in the strict foreclosure process, § 49-15 does not apply to the present action.

We conclude that, by its terms, § 49-15 does not apply to the present action. See *First Connecticut Capital, LLC* v. *Homes of Westport, LLC,* 112 Conn. App. 750, 752 n.3, 966 A.2d 239 (2009), citing D. Caron & G. Milne, Connecticut Foreclosures (4th Ed. 2004) § 9.01B, p. 203 ("[§] 49-15, by its very terms, is applicable only to judgments of strict foreclosure, and thus can have no effect on a judgment of foreclosure by sale" [internal quotation marks omitted]).

We begin by setting forth our standard of review. This court has recognized that "[w]hether to grant a motion to open [a judgment of foreclosure by sale] rests in the discretion of the trial court." *Union Trust Co.* v. *Roth*, 58 Conn. App. 481, 481, 755 A.2d 239 (2000). The issue in this appeal, however, is whether the court properly determined that it had the authority to grant a motion to open the judgment of foreclosure by sale after the court had confirmed the sale and title had vested in the purchaser, which presents a question of law over which our review is plenary. See *Falls Mill of Vernon Condominium Assn., Inc.* v. *Sudsbury*, 128 Conn. App. 314, 318, 15 A.3d 1210 (2011) ("[t]he issue in this appeal is whether the court properly determined that it lacked authority to open the judgment of strict foreclosure . . . [which] presents a question of law over which our review is plenary").

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Citations omitted; internal quotation marks omitted.) *In re Matthew F.*, 297 Conn. 673, 688–89, 4 A.3d 248 (2010).

A motion to open a judgment of foreclosure by sale is typically subject to two restrictions. *First Connecticut Capital, LLC* v. *Homes of Westport, LLC*, 112 Conn. App. 750, 752 n.3, 966 A.2d 239 (2009). First, a motion to open a judgment of foreclosure by sale must be filed within the four month restriction of General Statutes

§ 52-212a.[8] Id. It is more appropriate to term this restriction as one affecting the court's substantive authority rather than as one affecting its jurisdiction. *Kim* v. *Magnotta*, 249 Conn. 94, 104, 733 A.2d 809 (1999); *Falls Mill of Vernon Condominium Assn., Inc.* v. *Sudsbury*, supra, 128 Conn. App. 318 n.5. "[A] court has the inherent authority to open, correct or modify its judgments. . . . The provisions of § 52-212a do not operate to strip the court of its jurisdiction over its judgments, but merely operate to limit the time period in which a court may exercise its substantive authority to adjudicate the merits of a case." (Citation omitted.) *Bridgeport* v. *Triple 9 of Broad Street, Inc.*, 87 Conn. App. 735, 744, 867 A.2d 851 (2005).

In the present case, the court rendered judgment of foreclosure by sale on August 4, 2008, and approved the committee sale on December 10, 2008. Olsen's motion to open the judgment, filed on April 23, 2009, was untimely pursuant to § 52-212a using either date. "Our case law on [§ 52-212a] recognizes that, in some situations, the principle of protection of the finality of judgments must give way to the principle of fairness and equity." *Kim* v. *Magnotta*, supra, 249 Conn. 109. Because we are not presented with a situation in which the timeliness of the motion pursuant to § 52-212a is dispositive, we will focus on the second restriction.

Our precedent provides that the second restriction on a motion to open a judgment of foreclosure by sale is that it must be filed "before absolute title left the property owner, which [in the case in which the motion

---

[8] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the Superior Court may not be opened or set side unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . . The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court . . . ."

is filed by the holder of the equity of redemption] means before the committee sale was approved." *Northeast Savings, F.A.* v. *Hopkins*, 22 Conn. App. 396, 400 n.3, 578 A.2d 136 (1990); see also *First Connecticut Capital, LLC* v. *Homes of Westport, LLC*, supra, 112 Conn. App. 752 n.3 (motion must be filed "before the committee sale is approved"). In the present appeal, the motion to open was not filed by the holder of the equity of redemption, but by the successful bidder at the foreclosure sale who subsequently took title to the property. Judicial confirmation of the sale, by itself, does not place the property beyond the court's authority.[9] We, therefore, frame the second restriction as requiring that the motion to open the judgment be filed before title to the property vests in the purchaser.

The court's approval or ratification of the sale does not vest title automatically with the purchaser. *Mortgage Electronic Registration Systems, Inc.* v. *White*, 278 Conn. 219, 230, 896 A.2d 797 (2006). Rather, pursuant to General Statutes § 49-26,[10] a conveyance of the

---

[9] "Under Connecticut law, a judicial sale becomes complete and creates a legal right to obligations *among parties* when it is confirmed and ratified by the court." (Emphasis added.) *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 13 Conn. App. 239, 247, 536 A.2d 962, cert. denied, 207 Conn. 805, 540 A.2d 373 (1988). "The possibility always remains that the bidder will fail to close . . . [and] if this happens, the court is required to order either a new sale or a strict foreclosure. Either event revives the previously extinguished equity of redemption and thus affords the owner a second opportunity to redeem the premises." D. Caron & G. Milne, Connecticut Foreclosures (4th Ed. 2004) § 9.01B, p. 203. Because the court can order either a new sale or strict foreclosure even after confirmation if the bidder fails to close, it is clear that judicial confirmation of the sale, by itself, does not affect the court's authority over the property.

[10] General Statutes § 49-26 provides in relevant part: "When a sale has been made pursuant to a judgment therefor and ratified by the court, a conveyance of the property sold shall be executed by . . . [the committee], which conveyance shall vest in the purchaser the same estate that would have vested in the mortgagee . . . if the mortgage . . . had been foreclosed by strict foreclosure . . . . The court, at the time of or after ratification of the sale, may order possession of the property sold to be delivered to the purchaser . . . ."

property sold shall be executed by the committee, which conveyance shall vest in the purchaser the same estate that would have vested in the mortgagee if the mortgage had been foreclosed by strict foreclosure. Once title to the property vests in the purchaser, the property itself is placed beyond the power of the court. See *Connecticut Savings Bank* v. *Howes*, 9 Conn. App. 446, 447–48, 519 A.2d 1216 (1987) (dismissing as moot mortgagor's appeal from denial of motion to open judgment in foreclosure by sale because title to property had passed). At that point, the proceeds from the sale take the place of the property and the court engages in whatever supplemental proceedings may be required to distribute those proceeds. See *Mortgage Electronic Registration Systems, Inc.* v. *White*, supra, 230; *Moran* v. *Morneau*, 129 Conn. App. 349, 356–57, 19 A.3d 268 (2011).

In the present case, title to the property vested in Olsen on January 21, 2009. Accordingly, we conclude that the court lacked the authority to grant Olsen's motion to open the judgment of foreclosure by sale because it was without jurisdiction over the property.

We will address Olsen's arguments to the contrary. First, Olsen argues that the court's jurisdiction over foreclosure actions extends to motions to open and vacate judgments filed by the purchaser at the foreclosure sale, citing *Citicorp Mortgage, Inc.* v. *Burgos*, 227 Conn. 116, 121, 629 A.2d 410 (1993). In *Citicorp Mortgage, Inc.*, the successful bidder at the foreclosure sale moved to set aside the sale and for the return of its deposit because the mortgagor had appealed from the court's confirmation of the sale, resulting in a substantial delay between the court's confirmation of the sale and the closing at which the bidder was to receive title. Id., 118–19. Our Supreme Court concluded that the trial court should have set aside the sale and returned the

deposit. Id., 123. In the present case, Olsen consummated the closing, received title and transferred title to LLC. Olsen does not stand on the same footing as the successful bidder in *Citicorp Mortgage, Inc.*, because, in that case, title had not vested in the successful bidder.

Next, Olsen argues that the court retains jurisdiction even after title has passed, citing *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 257, 708 A.2d 1378 (1998). In *New Milford Savings Bank*, our Supreme Court determined that, pursuant to General Statutes § 49-15, the trial court could open a judgment of *strict* foreclosure. Id. The motion to open was filed by the foreclosing bank, which, although intending to foreclose on three parcels of land, inadvertently listed only two parcels in its complaint. Id., 253–54. The court reasoned that the trial court had the authority to open the judgment "to determine the scope of the initial foreclosure judgment." Id., 257. After a hearing, the trial court had determined that title to the third property was under a cloud such that *no one had absolute title to it* at the time the bank filed its motion to open. Id., 257–58. Accordingly, our Supreme Court concluded that the applicable foreclosure statute did not "limit the jurisdiction of the trial court to exercise its equitable discretion and modify the scope of the . . . foreclosure judgment . . . ." Id., 258. In the present case, Olsen submitted the highest bid at the auction, consummated the closing and received title to the property subject to the IndyMac mortgage. That Olsen was not aware that the title was subject to the IndyMac mortgage in no way clouded his title such that the trial court retained jurisdiction to open the judgment, even for the limited purpose articulated in *New Milford Savings Bank*.

Finally, Olsen argues that the court can open the foreclosure proceedings, even after title has vested in the purchaser, when the equitable circumstances so

demand. We recognize that a court has broad equitable powers in the foreclosure context. *Reynolds* v. *Ramos,* 188 Conn. 316, 320, 449 A.2d 182 (1982). Our Supreme Court has stated that "[f]ollowing *confirmation of the sale,* a judicial sale generally will not be set aside in the absence of fraud, mistake or surprise." (Emphasis added.) *Citicorp Mortgage, Inc.* v. *Burgos,* supra, 227 Conn. 120. The trial court, although noting certain "highly relevant" behavior of the plaintiff's counsel; see footnote 4 of this opinion; made no finding that Olsen was the victim of fraud. Olsen has presented no legal support, and we have found none, for the proposition that a court has the authority to undo a foreclosure sale after title to the property has vested in the purchaser when, as here, the purchaser discovers that he purchased the property while mistaken about the status of the title.[11] To accept such a proposition would be to invite uncertainty into our system of property conveyance. "The rule of caveat emptor is generally applicable to judicial sales"; (internal quotation marks omitted) *Citicorp Mortgage, Inc.* v. *Burgos,* supra, 120; and it is incumbent on the purchaser to conduct an independent investigation concerning the title to the property that he acquires at the sale before he consummates the closing.

In the present case, Olsen received title to the property at the closing, although he was unaware that his title was subject to the IndyMac mortgage. The court found that it had rendered a judgment of foreclosure by sale on the basis of a mistaken belief that there was equity in the property sufficient to justify a sale, and the resulting errors in the sale process became apparent only after the priority mortgage was foreclosed. While judicial error can be an appropriate basis for the court

[11] The out-of-state and Superior Court authority cited by Olsen stand for the unremarkable proposition that a purchaser at a foreclosure sale can move the court to *set aside the sale* when the purchaser relied on misinformation provided by the committee or the conduct of the sale was otherwise misleading. Title had not vested in the purchaser in any of those cases.

to open a judgment; see *Connecticut Savings Bank* v. *Obenauf*, 59 Conn. App. 351, 355, 758 A.2d 363 (2000) (relief granted facially inconsistent with complaint); it cannot be so in this case because, at the time the court opened the judgment of foreclosure by sale, title had vested in the purchaser. Accordingly, the opening of the foreclosure judgment must be reversed.

## II

The plaintiff also claims that the court should not have granted the motions to join as party defendants filed by both Olsen and LLC because they lacked standing. LLC and Olsen argue in response that they have been specifically injured by the errors in the entire foreclosure process and, thus, have standing to "seek a judgment vacating the supplemental judgments and the judgment of foreclosure by sale." We address this claim because, although the court did not have the authority to open and vacate the judgment of foreclosure by sale, the court found that the motion to open was timely insofar as it sought to open and vacate the supplemental judgments. Moreover, the court still holds certain proceeds from the sale, which are subject to supplemental proceedings. We conclude that neither Olsen nor LLC should have been permitted to intervene in this action as party defendants to challenge the distribution of the proceeds.

The following additional facts and procedural history are relevant. After Olsen acquired title to the property at the closing and then transferred it to LLC, the plaintiff filed a motion for determination of priorities and supplemental judgment. In its memorandum of decision regarding Olsen's motion to open the foreclosure judgment, the court found that it was still unaware of the priority IndyMac mortgage when, on March 24, 2009, it disbursed to the plaintiff $91,854.27 in supplemental proceeds. On March 27, 2009, the estate, which had

defaulted on the two mortgages, filed a motion for a determination of priorities and for supplemental judgment, in which it sought the remaining proceeds from the sale. The court granted this motion on April 14, 2009. Olsen and LLC filed their motions to join on April 23 and April 24, 2009, in which they alleged facts concerning how Olsen acquired and how LLC subsequently lost title to the foreclosed property and in which they sought a refund of the purchase price. The court entered a separate order on the estate's motion for supplemental judgment on April 27, 2009, staying disbursement of the proceeds. When the court issued its memorandum of decision on Olsen's motion to open, it held approximately \$119,064.17.[12] The court rendered judgment opening the foreclosure judgment, but had not yet entered orders opening and vacating the supplemental judgments.

Although the decision whether to grant a motion to add a party to a pending legal proceeding generally rests within the sound discretion of a trial court; *Lettieri* v. *American Savings Bank*, 182 Conn. 1, 13, 437 A.2d 822 (1980); the issue of whether either Olsen or LLC could intervene as party defendants to seek a refund of the moneys paid for the foreclosed property is a question over which our review is plenary. *Washington Trust Co.* v. *Smith*, 241 Conn. 734, 745, 699 A.2d 73 (1997), overruled in part on other grounds by *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 454–55, 904 A.2d 137 (2006) (except for issue of timeliness of motion to intervene, trial court's decision on motion to intervene subject to plenary review). The parties have framed the question as one of standing, which "is

[12] The court credited the expert testimony offered by the plaintiff that both the plaintiff and the estate should have expected their interests to be foreclosed in the IndyMac action and neither reasonably could have expected to receive any funds from the present action. The court characterized the plaintiff's and the estate's receipt of any supplemental proceeds as a "windfall" of approximately \$100,000 each.

the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. . . . [S]tanding exists to attempt to vindicate arguably protected interests." (Citations omitted; internal quotation marks omitted.) *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 369, 880 A.2d 138 (2005). Similarly, when a party moves to intervene, "[t]he inquiry is whether the claims contained in the motion [to intervene], if true, establish that the proposed intervenor has a direct and immediate interest that will be affected by the judgment." *Washington Trust Co.* v. *Smith,* supra, 747.

We begin our analysis by noting that the successful bidder at an auction on foreclosed property has standing to move the court to undo the sale after confirmation, but prior to title passing; *Citicorp Mortgage, Inc.* v. *Burgos,* supra, 227 Conn. 123; and to become a party appellee to an appeal taken from the judgment approving the committee sale when the appellants challenge the adequacy of the price. *New Milford Savings Bank* v. *Mulville,* 56 Conn. App. 521, 523, 744 A.2d 447 (2000) (appeal jeopardized bidder's right to purchase subject property at amount of successful bid).

We conclude that a purchaser at a foreclosure sale who has consummated the closing, however, does not have standing to join the supplemental proceedings in order to seek the refund of his purchase price on the ground that a recorded, outstanding priority lien

existed. The purpose of supplemental proceedings is to adjudicate the rights of lienholders to the funds realized from the sale after the sale has been ratified by the court. *Moran* v. *Morneau*, supra, 129 Conn. App. 356–57; see also *Voluntown* v. *Rytman*, 27 Conn. App. 549, 553, 607 A.2d 896 (noting that, when purchase price exceeded recorded liens, proceeds from sale could pay encumbrancers and foreclosed former owner), cert. denied, 223 Conn. 913, 614 A.2d 831 (1992); D. Caron & G. Milne, Connecticut Foreclosures (4th Ed. 2004) § 17.04C, p. 393 ("greatest singular function of the supplemental judgment is the determination of priorities and the disbursement of the proceeds of the sale"). In Connecticut, supplemental proceedings in a foreclosure action are not a means by which foreclosure sale purchasers, dissatisfied with the condition of the property purchased or the title to the property received, may seek either abatement or refund of the purchase price.[13]

The facts of this case provide an additional compelling reason for us to reach this result. Olsen took title to the property on January 21, 2009. That day, he conveyed his interest in the property to LLC by way of a quitclaim deed. Such a deed is "an ordinary and primary instrument of conveyance and conveys to the grantee whatever interest the grantor has in the property." *Hoyt* v. *Ketcham*, 54 Conn. 60, 62, 5 A. 606 (1886). When Olsen filed his motions to join as a party defendant and to open the judgments, he did not hold an individual interest in the property. It follows that he did not hold an interest that could be affected by any entries of supplemental judgment distributing the proceeds from the sale, which proceeds had taken the place of the

---

[13] Courts generally do not permit a purchaser at a foreclosure sale to seek a refund or abatement of the purchase price for outstanding liens after judicial confirmation of the sale, except under limited circumstances. See, e.g., 50A C.J.S. 58, Judicial Sales § 65 (2008); 47 Am. Jur. 2d, Judicial Sales §§ 119 and 120 (2006).

property. Thus, even if a successful bidder at a foreclosure sale generally had a right to intervene in the supplemental proceedings to seek the return of his purchase price after taking title, which he does not, Olsen, who no longer had any individual interest in the property, could not pursue such right.

Regarding LLC, we note that only Olsen, and not LLC, filed the motion to open the supplemental judgments. Even if that were not the case,[14] we conclude that LLC did not have standing to assert a claim for the return of the sale proceeds because it did not expend those funds. Any such claim was personal to Olsen, and was therefore not one which LLC could pursue on his behalf. Cf. *Wasko* v. *Farley*, 108 Conn. App. 156, 170, 947 A.2d 978 ("[a] member [of an LLC] may not sue in an individual capacity to recover for an injury the basis of which is a wrong to the limited liability company"), cert. denied, 289 Conn. 922, 958 A.2d 155 (2008); General Statutes § 34-167 (a) ("Property transferred to or otherwise acquired by a limited liability company is property of the limited liability company and not of the members individually. A member has no interest in specific limited liability company property.").

Accordingly, we conclude that neither Olsen nor LLC had standing to join the present action as party defendants and the court was without subject matter jurisdiction to grant either of them any relief as asserted in Olsen's motion to open.

The judgment is reversed and the case is remanded with direction to deny the motion to open the judgment of foreclosure by sale.

In this opinion the other judges concurred.

---

[14] At the hearing on the motion to open held on June 2, 2009, counsel for Olsen and LLC stated on the record that both parties sought "to vacate and overturn the judgment," but the pleadings were not amended to conform to that representation.