TD BANKNORTH, N.A. *v.* WHITE WATER MOUNTAIN RESORTS OF CONNECTICUT, INC., ET AL.
(AC 32639)

Gruendel, Robinson and Sullivan, Js.

Argued December 6, 2011—officially released February 14, 2012

*Kenneth R. Leavitt*, pro se, the appellant (defendant).

*Robert M. Barrack*, for the appellee (substitute plaintiff).

### Opinion

GRUENDEL, J. The self-represented defendant Kenneth R. Leavitt[1] appeals from the August 2, 2010 judgment of strict foreclosure rendered by the trial court

---

[1] White Water Mountain Resorts of Connecticut, Inc., Powder Ridge Restaurant Corporation, White Water Mountain Resorts, Inc., and several subsequent encumbrancers were also named as defendants in this action. Because none of these defendants is a party to this appeal, we refer in this opinion to Leavitt as the defendant and refer to the other defendants by name.

We note at the outset that the defendant, although represented by counsel initially, filed an appearance as a self-represented party on May 26, 2009. "Although we are mindful of our policy to be solicitous of pro se litigants

in favor of the substitute plaintiff, Middlefield Holdings, LLC.[2] The defendant argues that the court improperly denied his motion to open the judgment, failed to consider certain facts when rendering the judgment of strict foreclosure and erred by failing to interpret his pleadings as a writ of audita querela. We affirm the judgment of the trial court.

The following factual and procedural history is relevant to our disposition of this appeal. On August 26, 2003, White Water Mountain Resorts of Connecticut, Inc. (White Water), executed a promissory note in the amount of $2,000,000 in favor of TD Banknorth, N.A. (TD Banknorth). To secure the note, White Water executed a mortgage in favor of TD Banknorth on its Powder Ridge property in Middlefield (first mortgage). On the same date, the defendant executed a guaranty in favor of TD Banknorth, pursuant to which he guaranteed payment of all sums due under the promissory note. To secure the note and the guaranty, the defendant gave TD Banknorth a mortgage on his residential property in Middlefield (residential mortgage).

On June 1, 2004, White Water executed a promissory note in the amount of $430,000 in favor of TD Banknorth, also secured by a mortgage on the Powder Ridge

. . . such policy is applicable only when it does not interfere with the rights of other parties. Although our courts allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Citation omitted; internal quotation marks omitted.) *Shah* v. *Administrator, Unemployment Compensation Act*, 114 Conn. App. 170, 177, 968 A.2d 971 (2009). The defendant's failure to comply with procedural requirements in this matter "demonstrates that a pro se party who, unskilled in such matters, seeks to remedy some claimed wrong by invoking processes which are at best technical and complicated, is very ill advised and assumes a most difficult task." (Internal quotation marks omitted.) *Raffone* v. *Industrial Acceptance Corp.*, 119 Conn. App. 261, 265 n.2, 987 A.2d 1059 (2010).

[2] In November, 2006, the plaintiff TD Banknorth, N.A., assigned its interest in the subject notes and mortgages to Middlefield Holdings, LLC, which was substituted as the plaintiff in place of TD Banknorth, N.A., in January, 2007. Accordingly, we refer in this opinion to Middlefield Holdings, LLC, as the plaintiff.

property (second mortgage). On the same date, the defendant executed another guaranty in favor of TD Banknorth, guaranteeing payment of all sums due under the second note.

In November, 2005, TD Banknorth filed a three count revised complaint seeking foreclosure of the first mortgage, the second mortgage and the residential mortgage. On January 30, 2006, TD Banknorth filed a motion for judgment of strict foreclosure on all three mortgages. The defendant subsequently was defaulted for failure to plead.[3] On April 3, 2006, the court rendered an amended judgment of foreclosure by sale with respect to the first and second mortgages and set a sale date of April 14, 2007.

On April 6, 2007, the action was stayed due to an involuntary bankruptcy petition filed against White Water by three of its creditors. After obtaining relief from the bankruptcy stay, the plaintiff filed a motion to open the judgment on the first and second mortgages and to set a new sale date. On April 7, 2008, the court granted the motion to open and rendered a new judgment of foreclosure by sale for the Powder Ridge property, determining the debt to be $3,229,337.70. A sale date of June 21, 2008, was set. The plaintiff was the highest bidder at the foreclosure sale with a bid of $2.75 million. The court approved the sale on July 14, 2008.

On February 27, 2009, the plaintiff filed a motion seeking strict foreclosure of the residential mortgage. The court granted the motion and rendered a judgment of strict foreclosure on March 30, 2009. On June 17, 2009, the defendant filed a motion to open the judgment

---

[3] The defendant did not, at any time, file a motion to set aside the default pursuant to Practice Book § 17-42. White Water, Powder Ridge Restaurant Corporation, White Water Mountain Resorts, Inc., Fuss and O'Neill, Inc., and Mortgage Electronic Registration Systems, Inc., were also defaulted for a failure to plead.

of foreclosure,[4] which the court denied.[5] On July 23, 2010, the defendant filed a motion for stay of the foreclosure action, which the court denied. On August 2, 2010, the court rendered a new judgment of strict foreclosure as to the defendant's residential property, finding the debt to be $628,134.44 and ordering law days to commence on October 4, 2010. This appeal followed.

The defendant argues first that the court improperly interpreted his motion to open as applying only to the April 7, 2008 judgment and, therefore, improperly denied the motion as untimely. The defendant's second argument is based on his ongoing allegations of fraud, namely, a lost subordination agreement and the sale of personal property, and is apparently challenging the August 2, 2010 judgment of strict foreclosure from which he appealed.[6] The defendant also argues that the

[4] The defendant argues in this appeal that the motion to open was directed both at the April 7, 2008 foreclosure by sale judgment rendered as to the first and second mortgages and the March 30, 2009 strict foreclosure judgment rendered as to his residential mortgage.

[5] On February 8, 2011, the court issued an articulation explaining its reasons for denying the defendant's motion to open. The court's articulation demonstrates that the court believed that the defendant's motion to open was directed only at the April 7, 2008 foreclosure by sale judgment rendered as to the first and second mortgages. The court articulated that the defendant's motion to open that judgment was untimely, as it was not filed until well outside the four month period provided for by statute.

[6] The defendant also argues that the court should have held an evidentiary hearing before rendering the August 2, 2010 judgment. Practice Book § 23-18 (a) provides that "[i]n any action to foreclose a mortgage where no defense as to the amount of the mortgage debt is interposed, such debt may be proved by presenting to the judicial authority the original note and mortgage, together with the affidavit of the plaintiff or other person familiar with the indebtedness, stating what amount, including interest to the date of the hearing, is due, and that there is no setoff or counterclaim thereto." Mortgage Electronic Registration Systems, Inc., filed an objection to proceeding to judgment by means of an affidavit of debt pursuant to Practice Book § 23-18 and requested an evidentiary hearing. The court overruled the objection in part because Mortgage Electronic Registration Systems, Inc., was also defaulted and, like the defendant, could not raise defenses to the amount or calculation of the debt. The defendant, however, never requested an evidentiary hearing, and therefore the issue is not properly before us.

court erred in failing to consider his pleadings as a writ of audita querela. We address each claim in turn.

## I

The defendant first claims that the court improperly denied his June 17, 2009 motion to open the judgment. Specifically, he argues that the motion was timely filed as to the March 30, 2009 judgment foreclosing the residential mortgage, and, if the court interpreted the motion as seeking to open only the April 7, 2008 judgment of foreclosure as to the first and second mortgages, then that was an abuse of the court's discretion. We disagree that it was error to interpret the motion to open as only directed at the April 7, 2008 judgment of foreclosure by sale and conclude that the court properly denied the motion.

"Our courts have the inherent authority to open, correct or modify judgments, but this authority is restricted by statute and the rules of practice." *Ziruk* v. *Bedard*, 45 Conn. App. 137, 138, 695 A.2d 4, cert. denied, 243 Conn. 905, 701 A.2d 339 (1997). Pursuant to General Statutes § 52-212a, a civil judgment may not be opened unless a motion to open is filed within four months following the date on which it was rendered. "When a motion to open is timely filed, our review is limited to whether the court has acted unreasonably or has abused its discretion." (Internal quotation marks omitted.) *Federal Ins. Co.* v. *Gabriele*, 54 Conn. App. 459, 461, 735 A.2d 368 (1999). When a motion to open is untimely, the trial court lacks authority to open the judgment. *Citibank, N.A.* v. *Lindland*, 131 Conn. App. 653, 660–61, 27 A.3d 423, cert. granted on other grounds, 303 Conn. 906, 31 A.3d 1180 (2011). Whether the court properly determined that it lacked authority to open the judgment of strict foreclosure presents a question of law over which our review is plenary. See *Falls Mill of*

*Vernon Condominium Assn., Inc.* v. *Sudsbury,* 128 Conn. App. 314, 318, 15 A.3d 1210 (2011).

We first address the plaintiff's contention that this issue is not properly before this court. The plaintiff argues that any arguments raised by the defendant based on the June 17, 2009 denial of the motion to open are not properly before this court because the defendant did not appeal from that judgment. The appeal form, filed on August 25, 2010, states that the defendant is appealing from the "judgment of strict foreclosure." Because the defendant failed to appeal from the June 17, 2009 judgment within twenty days as required by Practice Book § 63-1,[7] the plaintiff claims that any appeal from that judgment is untimely and cannot be raised as a ground for appeal.

Although the defendant's preliminary statement of the issues, filed on September 2, 2010, does not raise arguments relating to the denial of the motion to open, the defendant's statement of the issues in his brief, filed on March 18, 2011, lists as the first issue the trial court's error in denying the motion to open. The plaintiff was required to challenge that ground for appeal within ten days after the filing of the appeal pursuant to Practice Book § 66-8.[8] See *Connecticut Commercial Lenders, LLC* v. *Teague,* 105 Conn. App. 806, 808–809, 940 A.2d

---

[7] A denial of a motion to open filed outside of the twenty day appeal period but within the four month period provided for by statute; see General Statutes § 52-212a; is an appealable final judgment. See *Morelli* v. *Manpower, Inc.,* 226 Conn. 831, 835, 628 A.2d 1311 (1993); *First Connecticut Capital, LLC* v. *Homes of Westport, LLC,* 112 Conn. App. 750, 755–60, 966 A.2d 239 (2009); C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 3.13, p. 103.

[8] Practice Book § 66-8 provides in relevant part: "Any claim that an appeal or writ of error should be dismissed, whether based on lack of jurisdiction, failure to file papers within the time allowed or other defect, shall be made by a motion to dismiss the appeal or writ. Any such motion must be filed in accordance with Sections 66-2 and 66-3 within ten days after the filing of the appeal or the return day of the writ, *or if the ground alleged subsequently occurs,* within ten days after it has arisen . . . ." (Emphasis added.)

831 (2008); *Chase Manhattan Mortgage Corp.* v. *Machado*, 83 Conn. App. 183, 185 n.3, 850 A.2d 260 (2004); *Savage* v. *Savage*, 25 Conn. App. 693, 694 n.1, 596 A.2d 23 (1991). Consequently, the plaintiff has waived its right to seek dismissal of the defendant's arguments relating to his motion to open as an untimely appeal.

It is the defendant's contention that his motion to open was directed at both the judgment of foreclosure by sale of the first and second mortgages and the strict foreclosure judgment of the residential mortgage. The court's articulation makes clear that the court interpreted the motion to open as applying only to the judgment of foreclosure by sale of the first and second mortgages. We therefore must determine whether the court properly determined that the motion to open applied only to the April 7, 2008 judgment of foreclosure by sale.

The defendant's motion to open presents the long and convoluted history of this litigation, and the various theories of fraud that the defendant consistently has alleged. The motion to open argues that "the extent of corrupt practices by town officials was so significant and central to the case at hand as to warrant a reopening of the foreclosure matter involving the Powder Ridge Ski Area . . . ." The motion states that "due process calls for the foreclosure action of Powder Ridge Ski Area to be vacated by the court . . . ." The motion, approximately twenty pages long, mentions only in passing the judgment of strict foreclosure on the residential mortgage and does not request that the judgment be opened. On its face, the motion plainly seeks to open only the April 7, 2008 judgment of foreclosure by sale on the first and second mortgages.

Moreover, the plaintiff correctly argues that at the time that the defendant filed his motion to open, the court had already granted an earlier motion to open

filed by Mortgage Electronic Registration Systems, Inc. (Mortgage Electronic). On May 21, 2009, after the court had rendered the judgment of strict foreclosure as to the residential mortgage, Mortgage Electronic filed a motion to open the judgment of strict foreclosure, claiming that its mortgage on the property had partial priority to the plaintiff's mortgage under the doctrine of equitable subrogation. The court granted the motion on May 26, 2009. When the defendant filed his June 17, 2009 motion to open, the judgment already had been opened. Therefore, we conclude that the defendant's motion to open was only directed at the April 7, 2008 judgment of foreclosure by sale.[9]

We conclude further that the court properly denied the motion to open as to the April 7, 2008 judgment of foreclosure by sale. "A motion to open a judgment of foreclosure by sale is typically subject to two restrictions. . . . First, a motion to open a judgment of foreclosure by sale must be filed within the four month restriction of General Statutes § 52-212a. . . . [T]he second restriction on a motion to open a judgment of foreclosure by sale is that it must be filed before absolute title left the property owner, which [in the case in which the motion is filed by the holder of the equity of redemption] means before the committee sale was approved." (Citations omitted; internal quotation marks

---

[9] We note the distinction between a motion to open a judgment of foreclosure by sale and a judgment of strict foreclosure. While a judgment of foreclosure by sale is subject to the provisions of General Statutes § 52-212a; see *Citibank, N.A.* v. *Lindland*, supra, 131 Conn. App. 660–61; the opening of judgments of strict foreclosure is governed by General Statutes § 49-15. Under that provision, a judgment of strict foreclosure may be opened for cause shown but may not "be opened after the title has become absolute in any encumbrancer . . . ." General Statutes § 49-15 (a) (1); see also *Falls Mill of Vernon Condominium Assn., Inc.* v. *Sudsbury*, supra, 128 Conn. App. 319–20. Because we conclude that the motion to open was directed solely at the judgment of foreclosure by sale, the timeliness of the motion is determined by § 52-212a.

omitted.) *Citibank, N.A.* v. *Lindland,* supra, 131 Conn. App. 660–62.

The defendant filed the motion to open on June 17, 2009, well outside the four month period following the April 7, 2008 judgment. Moreover, the sale was approved on July 14, 2008. The motion to open was untimely filed under either restriction articulated by this court in *Citibank, N.A.* v. *Lindland,* supra, 131 Conn. App. 660–62. Therefore, the court was without authority to open the judgment and properly denied the motion.

II

The defendant attempts to challenge the judgment of strict foreclosure on two grounds. He argues in his motion to open, and again in this appeal, that it was improper for the court not to consider the plaintiff's sale of personal property located at the Powder Ridge property that the defendant alleges was commercially unreasonable. The defendant also argues that the judgment of strict foreclosure was improper in light of a subordination agreement that allegedly demonstrates that the plaintiff improperly represented its mortgage on the residential property as having first priority. We do not reach the merits of these arguments because a default judgment was entered against the defendant.

"In order for foreclosure cases to move as swiftly as possible through our court system, it is imperative that a defendant disclose any defenses to the mortgage debt prior to the hearing." *Suffield Bank* v. *Berman,* 25 Conn. App. 369, 373, 594 A.2d 493, cert. dismissed, 220 Conn. 913, 597 A.2d 339, cert. denied, 220 Conn. 914, 597 A.2d 340 (1991). "The entry of a default constitutes an admission by the [defaulted party] of the truth of the facts alleged in the complaint." (Internal quotation marks omitted.) *Motherway* v. *Geary,* 82 Conn. App. 722, 728, 846 A.2d 909 (2004). Practice Book § 17-33 (b) provides

in relevant part that "the effect of a default is to preclude the defendant from making any further defense in the case so far as liability is concerned . . . ." It also provides that "at or after the time it renders the default, [the judicial authority] may also render judgment in foreclosure cases . . . provided the plaintiff has also made a motion for judgment and provided further that any necessary affidavits of debt or accounts or statements verified by oath, in proper form, are submitted to the judicial authority." Practice Book § 17-33 (b).

On November 4, 2010, the defendant filed a motion for articulation as to the judgment of strict foreclosure. The defendant requested that the court articulate if the entry of a default judgment against the defendant was a factor in awarding strict foreclosure and also posited to the court that a default judgment was unfair in light of events that transpired after the entering of the default judgment. The court responded that the default judgment was "necessarily a factor in entering the judgment of strict foreclosure as such judgment is predicated on the entry of a default or admission of liability." The court also responded that any material changes in events and circumstances following the entry of default "did not justify the opening of a judgment and vacating of a default, assuming the court had authority in the first instance, to set aside a default entered four years earlier and a judgment entered almost one year prior to the motion to open having been filed."

The court granted the plaintiff's motion for default for failure to plead on February 7, 2006. The effect of the default was to preclude the defendant from making any defense to liability for the claims asserted in the complaint and to permit the entry of judgment in the plaintiff's favor. See Practice Book § 17-33 (b). Thereafter, the plaintiff filed a motion for a judgment of strict foreclosure, which was granted. The court was not required to address the arguments of a defaulted party

as to issues of liability. Therefore, it was proper for the court not to take the circumstances alleged by the defendant into consideration, as explained in the court's articulation.

## III

The defendant also argues that the court erred by failing to consider his pleadings as a writ of audita querela. The defendant did not file a writ of audita querela with the trial court, and therefore this argument is not properly before us.

"The writ of audita querela provides relief from a judgment at law because of events occurring subsequently which should cause discharge of a judgment debtor." (Internal quotation marks omitted.) *Ames* v. *Sears, Roebuck & Co.*, 206 Conn. 16, 21, 536 A.2d 563 (1988). "The ancient writ of audita querela has been defined as a writ issued to afford a remedy to a defendant against whom judgment had been rendered, but who had new matter in defense (e.g., a release) arising, or at least raisable for the first time, after judgment. . . . Because the writ impairs the finality of judgments, the common law precluded its use in cases in which the judgment debtor sought to rely on a defense such as payment or a release that he had the opportunity to raise before the entry of judgment against him." (Internal quotation marks omitted.) *Anthony Julian Railroad Construction Co.* v. *Mary Ellen Drive Associates*, 50 Conn. App. 289, 294, 717 A.2d 294 (1998).

The defendant did not file a writ of audita querela with the trial court.[10] A writ of audita querela is filed

---

[10] To the extent that the defendant argues that the court should have sua sponte identified his pleadings as a writ of audita querela, we disagree. A writ of audita querela affords a remedy to a defendant against whom judgment has already been rendered. *Anthony Julian Railroad Construction Co.* v. *Mary Ellen Drive Associates*, supra, 50 Conn. App. 294. The defendant's pleadings, in particular his motion to open, were filed before the court rendered its judgment of strict foreclosure on August 2, 2010. Because the defendant could not file a writ of audita querela before the entry of judgment against

with the court that rendered the judgment complained of. *Young* v. *Young*, 78 Conn. App. 394, 395–96, 827 A.2d 722 (2003); *Ames* v. *Sears, Roebuck & Co.*, supra, 206 Conn. 19–20; 7 Am. Jur. 2d, Audita Querela § 5 (2007). Because the defendant did not distinctly raise the claim of audita querela in the trial court, we need not address here the vitality of that writ in this case. See *Lashgari* v. *Lashgari*, 197 Conn. 189, 201 n.7, 496 A.2d 491 (1985). Thus, we do not address this argument as it was not presented to the trial court.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

him, the court did not err in not considering his prejudgment pleadings a writ of audita querela.